THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. QUENTIN T. TRAYLOR, Defendant-Appellant.

Third District   No. 3—00—0672

Opinion filed June 14, 2002.—Rehearing denied July 15, 2002.

Verlin R. Meinz, of State Appellate Defender's Office, of Ottawa, for appellant.

Jeff Tomczak, State's Attorney, of Joliet (John X. Breslin and Richard T. Leonard, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOMER delivered the opinion of the court:

Following a stipulated bench trial, Quentin Traylor was found guilty and sentenced to 38 years' imprisonment for first degree murder (720 ILCS 5/9—1 (West 1998)), 6 years for harassment of a witness (720 ILCS 5/32—4a (West 1998)) and 6 years for intimidation (720 ILCS 5/12—6 (West 1998)). The 6-year terms were to be served concurrently to each other but consecutive to the 38-year term. Traylor appeals his convictions. After our careful review, we reverse and remand for a new trial.

## BACKGROUND

On September 24, 1999, Traylor was brought to the Will County sheriff's office for questioning related to the murder of Julius Smith. Sheriff's investigators Terry Paggi and Edward Hayes took Traylor to an interview room, presented him with a form advising him of his *Miranda* rights and, according to the investigators, also read Traylor his *Miranda* rights. Traylor signed the *Miranda* form, and the investigators questioned Traylor for approximately three hours. During the interview, Simon Peter McMurtry, a co-suspect, was brought into the interview room. At first McMurtry indicated that Traylor did not shoot Smith, but when McMurtry was brought into the room again, he indicated that Traylor did shoot the victim. Shortly after that, Traylor gave an oral statement confessing to Smith's murder and made a short videotaped confession. Traylor was then arrested and taken by officers to a holding cell in the Will County jail, where he remained until the next day when he was formally arrested.

Traylor was formally arrested on September 25, and a photograph was taken of him at that time. Immediately after he was formally arrested, Traylor was taken to a segregated portion of the jail where he had no contact with other inmates. Traylor remained in that portion of the jail for approximately two weeks.

On October 13, Traylor was indicted for first degree murder, harassment of a witness and conspiracy in connection with the death of Julius Smith. Traylor pled not guilty. Traylor filed a motion to sup-

press his confession because he alleged he was not given *Miranda* warnings and because his statements were coerced by police officers who physically abused him. The trial court conducted a hearing in respect to the motion to suppress.

At the hearing, Traylor testified that before his interview with the officers, he was not verbally given his *Miranda* rights but was simply given a form to sign, which he signed. He also testified that during the interrogation, the officers tripped him, hit him in the nose and ribs, and squeezed his genitals. Traylor said he agreed to make a statement only after one of the officers squeezed his genitals. He testified that he told his attorney about the abuse and admitted that he did not disclose it on any of the county jail health forms he had filled out for other medical problems. Even though Traylor did not mention the alleged abuse in any of the medical forms, Traylor testified that he did tell a nurse at the jail that he had been beaten by the police. Traylor testified that he went to St. Joseph's Medical Center on September 21 because his eye was yellow and his hair was falling out. He denied that he complained of a red nose at the medical center.

Michael Vanover, an investigator for the Will County public defender's office, testified that he took photos of Traylor on September 29. A review of those photos clearly shows some bruising on the right side of Traylor's nose. Vanover stated that he saw bruising in the September 25 booking photo that was similar to the bruising shown in the September 29 photos. Corey Kelly, an acquaintance of Traylor, testified that Traylor had no facial injuries when he was taken by the police to be questioned on September 24, but Kelly did notice redness and bruising on Traylor's nose in the booking photo. Additionally, Robert Hadala, a private investigator hired by Traylor's attorney, testified that he took photos of Traylor on November 4, 1999, and that there was a mark on Traylor's face around his nose on that date.

Inspectors Paggi and Hayes stated that Traylor had no cuts, bruises, wounds or injuries of any kind when he came or left the sheriff's office on September 24. They also denied seeing any bruising, redness or marks on Traylor's face in the September 25 booking photo. They both acknowledged an injury was present in the September 29 photo. They denied that Traylor had that injury on September 24 or 25.

After considering the above evidence, the trial court found that the defense had shown that Traylor was injured "while in police custody." Thereafter, the hearing continued, and the State presented its witnesses. Joan Adams, a registered nurse at St. Joseph's Medical Center, testified that Traylor had been to the emergency room on September 21, 1999, and complained of having a red nose. Nurse Adams remembered that the tip of Traylor's nose was red at that time

but specifically denied seeing any marks on the bridge of his nose at that time. She stated that she would have documented it in her triage report if she had seen any such marks.

The State also presented the testimony of several police officers who denied that Traylor was physically coerced during the interview. Investigator Paggi reiterated that Traylor was not physically abused in any way during his interview. Investigator Michael Guilfoyle and Sergeant Ryan Shea, who observed parts of the interview, testified that they never saw Traylor being struck by the officers. Additionally, Lieutenant David Van Dyke testified that he watched the interview and never saw Traylor being struck, taken down or grabbed at any time. After hearing the above testimony, the trial court denied Traylor's motion to suppress, finding that Traylor's statements were made voluntarily after he had been advised of his *Miranda* rights.

Traylor then appeared in court for a stipulated bench trial. The trial court found Traylor guilty of murder (three counts), harassment of a witness, intimidation and conspiracy (two counts). The court vacated the convictions for two counts of murder and both counts of conspiracy. The court sentenced Traylor to 38 years for murder and extended-term sentences of 6 years each for harassment of a witness and intimidation. The six-year terms were to run concurrently with each other but consecutive to the murder sentence. Traylor appeals arguing that the trial court erred by (1) failing to suppress his confession, (2) sentencing him for both intimidation and harassment of a witness, (3) sentencing him consecutively for intimidation and harassment of a witness, and (4) sentencing him to extended terms for intimidation and harassment of a witness. Because we agree that the trial court should have suppressed Traylor's confession, we reverse and remand for a new trial on that ground. Therefore, it is not necessary for us to address Traylor's additional arguments.

## ANALYSIS

In order for a confession to be admissible as evidence, the trial court must determine that the defendant made it freely, voluntarily and without compulsion or inducement. *People v. Gilliam*, 172 Ill. 2d 484, 500, 670 N.E.2d 606, 613 (1996). A confession is voluntary if, based on the totality of circumstances, the accused's will was not overborne at the time he confessed. *People v. Kincaid*, 87 Ill. 2d 107, 117, 429 N.E.2d 508, 511 (1981). In reviewing whether a defendant's confession is voluntary, a reviewing court will accord great deference to the trial court's factual findings and will reverse those findings only if they are against the manifest weight of the evidence. *In re G.O.*, 191 Ill. 2d 37, 50, 727 N.E.2d 1003, 1010 (2000).

■ When a defendant moves to suppress his confession, the State bears the burden to establish that the confession was voluntary. *People v. Woods*, 184 Ill. 2d 130, 145, 703 N.E.2d 35, 42 (1998). Once a defendant establishes that he has been injured while in police custody, a heightened burden of proof is imposed on the State to show by clear and convincing evidence that the injuries were not inflicted as a means of producing the confession. *People v. Wilson*, 116 Ill. 2d 29, 40, 506 N.E.2d 571, 575 (1987).

■ We hold that the trial court's decision to deny Traylor's motion to suppress was against the manifest weight of the evidence. The trial court found that an injury on Traylor's nose was present on September 29 and possibly on September 25 based on photographs. After viewing the photographs, we find that definite bruising was present on Traylor's nose in the September 25 photograph. Additionally, we find that such bruising was not present before Traylor's interrogation based on the testimony of every witness, including the investigators. Because Traylor proved that he had been injured "while in police custody," the State was required to prove by clear and convincing evidence that Traylor's injuries were not inflicted as a means of producing a confession. See *Wilson*, 116 Ill. 2d at 40, 506 N.E.2d at 575. We find that the State failed to meet its burden of proof.

This case is factually similar to *Woods*, where the supreme court found that the State had not met its burden of proving by clear and convincing evidence that the defendant's injuries were not inflicted in order to obtain a confession. In *Woods*, it was undisputed that the defendant had injuries, including an abrasion on his forehead and eye, on April 25, three days after he had been brought into the police station. *Woods*, 184 Ill. 2d at 148, 703 N.E.2d at 43. From the time that the defendant arrived at the police department on April 22 until the time when he was booked and photographed on April 25, he was either in the presence of police officers or in a single-person holding cell. *Woods*, 184 Ill. 2d at 149, 703 N.E.2d at 44. The court reasoned that since the defendant was either in the presence of police officers or in a single-person cell at all times, the State should have been able to prove whether the defendant sustained his injuries before or after his confession, as well as the cause of his injuries. *Woods*, 184 Ill. 2d at 150, 703 N.E.2d at 44. Because the State did not adduce clear and convincing evidence as to when or how the defendant's injuries occurred or that the injuries were unrelated to his confession, the defendant's confession was suppressed. *Woods*, 184 Ill. 2d at 150, 703 N.E.2d at 44.

Likewise, in this case, Traylor was in the presence of officers or in a single-person cell from the time of his arrest until the time of his

booking photograph taken on September 25, which shows an injury on the bridge of his nose. Because Traylor was either in the presence of police officers or in a single-person cell at all times, the State should have been able to prove whether the defendant sustained his injuries before or after his confession, as well as the cause of his injuries. See *Woods*, 184 Ill. 2d at 150, 703 N.E.2d at 44. Here, however, the State failed to do so.

The State's presentation of witnesses consisted almost entirely of police officers who denied any wrongdoing. However, mere denials of coercion by police officers are insufficient to establish by clear and convincing evidence that a defendant's injuries were not sustained as a means of eliciting a confession. *Wilson*, 116 Ill. 2d at 40, 506 N.E.2d at 575. The only testimony in addition to the police officers' was that of Nurse Adams. Nurse Adams' testimony, however, does not help the State prove that Traylor was not injured while in police custody because although she testified that Traylor had some redness on the tip of his nose three days prior to him being arrested, she specifically denied that he had any bruising on the bridge of his nose. Additionally, all of the witnesses, including the police officers, testified that Traylor had no injuries to his nose when he was brought to the sheriff's office for questioning on September 24, so any injury that may have been present three days before that is irrelevant.

The only other evidence that the trial court found supporting the State's position that Traylor was not injured by the police was two "Inmate Health Service Requests" submitted by Traylor on October 6 and October 16 in which Traylor sought treatment for various medical conditions but did not seek treatment for his injured nose. Those forms merely establish that two and three weeks after the alleged abuse, Traylor did not report in writing the injuries he claims were caused by the police. We find these documents are insufficient to sustain the State's burden of establishing by clear and convincing evidence that Traylor's injuries were not inflicted as a means of producing his confession.

As explained in *Woods*, the State may satisfy its burden of proof by presenting evidence that the defendant was uninjured at the time of his confession and that he suffered injuries sometime thereafter. *Woods*, 184 Ill. 2d at 147, 703 N.E.2d at 43. If the State can prove by clear and convincing evidence that a defendant's injuries occurred after his confession, the State is not required to explain the defendant's injuries. *Woods*, 184 Ill. 2d at 147-48, 703 N.E.2d at 43. The State contends that Traylor's injuries were not present until September 29 and therefore the police did not cause the injury during the interrogation. However, the photographs show an injury present on September

25, only one day after Traylor's confession. Therefore, it was incumbent upon the State to prove by clear and convincing evidence that Traylor's injury was not present at the time of his confession but happened sometime after that. However, the State failed to do so.[1]

Even assuming, *arguendo*, that no injury was clearly visible until September 29, the State still failed to meet its burden of proving that Traylor's injuries occurred after his confession because from the time that Traylor arrived at the sheriff's office on September 24 until September 29, he was either in the presence of police officers or in a single-person cell. Because Traylor was either in the presence of police officers or in a single-person cell at all times, the State should have been able to prove whether the defendant sustained his injuries before or after his confession, as well as the cause of his injuries. See *Woods*, 184 Ill. 2d at 150, 703 N.E.2d at 44.

Because the State did not adduce clear and convincing evidence that Traylor's injuries were unrelated to his confession, his confession should have been suppressed. *Woods*, 184 Ill. 2d at 150, 703 N.E.2d at 44. Because the use of a coerced confession as substantive evidence of guilt is never harmless error, Traylor's convictions are reversed and this cause is remanded for a new trial. See *Wilson*, 116 Ill. 2d at 41, 506 N.E.2d at 576.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Will County is reversed, and the cause is remanded to the circuit court for a new trial.

Reversed and remanded.

LYTTON, P.J., and SLATER, J., concur.

---

[1]The record reveals that Traylor made a videotaped statement on September 24, but that videotape was never offered into evidence by either the State or the defense. If that videotape had been admitted into evidence and clearly showed that Traylor had no injuries at that time, the State could have readily sustained its burden of proof that Traylor was injured sometime after his confession.