SECOND DIVISION
September 25, 2007

No. 1-05-2042

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| | ) | Cook County |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| ANDRE RICHARDSON, | ) | Honorable |
| | ) | Diane Cannon |
| Defendant-Appellant. | ) | Judge Presiding. |
| | ) | |

JUSTICE KARNEZIS delivered the opinion of the court:

Following a jury trial defendant Andre Richardson was convicted of the first degree murder of his 11-month-old daughter and was sentenced to 40 years' imprisonment. Defendant now appeals and argues: (1) the trial court erred in denying his motion to suppress his statement; (2) he received ineffective assistance of counsel; (3) the trial court erred in refusing to instruct the jury on the lesser-included offense of involuntary manslaughter; and (4) he was denied a fair trial when autopsy photographs

were published to the jury and sent to the jury room during deliberations. For the following reasons, we reverse and remand for a new trial.

## BACKGROUND

The victim, Diamond Clark, was 11 months old when she was fatally beaten by her 16-year-old father on February 9, 2001. Defendant was arrested at approximately 3:30 p.m., on February 9, 2001, and ultimately gave a videotaped statement implicating himself in Diamond's death. The testimony at trial established that defendant punched, slapped, shook and bit his daughter. Defendant inflicted 61 injuries, both internal and external, on his daughter and Diamond died as a result of those injuries.

### Motion to Suppress

Prior to trial, the defense filed a motion to suppress defendant's videotaped statement on the grounds that it was involuntary and that defendant was unable to knowingly waive his *Miranda* rights because he was physically abused while in police custody.

At the hearing on the motion, Detective Edward O'Connell testified that on February 9, 2001, he was assigned to defendant's case. At approximately 8:30 that evening, Detective O'Connell arrived at Area 1 headquarters. At that time, defendant was brought upstairs to Area 1 from the 2nd District. Youth Investigator Nolan had defendant in custody. Detective O'Connell interviewed defendant at approximately 9:08 p.m. Present at the interview were youth investigator Nolan, Detective Zalatoris, defendant, and defendant's mother, Ellen Jean Brounaugh. Youth investigator Nolan read defendant his *Miranda* rights; defendant waived those rights and proceeded to

2

make admissions. During the interview, Detective O'Connell noticed that defendant had a bump over his eye and his eye was swollen. Detective O'Connell asked defendant about the bump and defendant stated that it happened in the lockup. Detective O'Connell could not recall if he asked defendant exactly what happened in the lockup but testified that juveniles only get fingerprinted in the lockup and are not housed there. Detective O'Connell stated that he did not talk to the lockup keeper and could not remember if he reported defendant's injuries to anyone and did not include any information regarding defendant's eye injury in his reports. The interview lasted approximately one hour. Subsequently, Detective O'Connell called Assistant State's Attorney John Heil. Heil arrived at approximately 10 p.m. and continued to interview defendant. During that interview, defendant made statements admitting his participation in the crime. Assistant State's attorney Heil asked defendant about the bump on his eye and defendant told Heil that he was punched in the lockup  A videotaped statement was made the following morning at approximately 9:27 a.m.

Detective John Zalatoris testified that on February 9, 2001, he and his partner, Detective O'Connell, were assigned to the murder of Diamond Clark. After going to the crime scene, he and his partner went back to Area 1. When they arrived there, defendant was in the 2nd District downstairs. When defendant was brought upstairs to Area 1, he had a swollen left eye. Defendant stated that he was hit by someone in the lockup. Detective Zalatoris did not ask for any details regarding the beating, but he did testify that juveniles are not kept in cells with adults but are housed in cells by

3

themselves. Detective Zalatoris subsequently learned that the 2nd District had contacted the Office of Professional Standards regarding defendant's eye injury.

At approximately 9:08 p.m., Detective Zalatoris and Detective O'Connell interviewed defendant. Youth investigator Nolan first gave defendant his *Miranda* rights. Defendant waived those rights and agreed to speak to the detectives. Defendant made a statement and then Detective Zalatoris confronted him with the bite marks on the child. Defendant gave a further statement and Assistant State's Attorney Heil was called. Detective Zalatoris denied punching or physically abusing defendant. Representatives from the Office of Professional Standards were allowed to interview defendant after he made his videotaped confession.

Assistant State's Attorney John Heil testified that on February 9, 2001, he received an assignment regarding the aggravated battery of Diamond Clark.[1] Heil testified that he arrived at Area 1 headquarters at approximately 10 p.m. and spoke with Detectives O'Connell and Zalatoris and youth investigator Nolan. Heil was informed that defendant had a swollen left eye as a result of something that happened in the lockup. Heil did not see defendant at that time but left Area 1 and went back to the hospital to check on the status of Diamond. After midnight, Heil returned to Area 1 to interview defendant. With defendant's mother present, Heil informed defendant of his *Miranda* rights and defendant agreed to speak with Heil. Defendant made a statement to Heil. Subsequently, Heil asked Detectives Zalatoris and O'Connell to leave the room.

---

[1]Defendant was initially charged with aggravated battery but when Diamond later died of her injuries, defendant was charged with first degree murder.

Heil then asked defendant how he had been treated since arriving in Area 1 and if what he told Heil regarding the crime had anything to do with his swollen eye. Defendant told Heil that he had been treated fine and that what he had been telling Heil was the truth and his statement had nothing to do with what happened earlier regarding his eye. After the detectives and youth investigator came back into the room, Heil talked to defendant about his options of memorializing the statement he had previously given to Heil, youth investigator Nolan and Detectives Zalatoris and O'Connell. Defendant chose to give a videotaped statement. The videotaped statement was taken at 9:27 a.m. on February 10, 2001. Heil stated that at no time did he or any of the detectives punch defendant or otherwise coerce defendant to give a statement.

The videotaped confession was played in open court. In the video, defendant stated that he was advised of his *Miranda* rights and agreed to have his statement videotaped. Defendant's mother was present during the statement. Defendant stated that earlier he had told Assistant State's Attorney Heil that during the late morning and early afternoon of February 9, 2001, he bit Diamond three times, struck her numerous times with a coat hanger and a belt, used his hand to hit her in the face once and struck her in the ribs and shook her. Assistant State's Attorney Heil asked defendant about his swollen eye. Defendant stated that the injuries to his eye occurred in the lockup after he was taken to the 2nd District police station but before he was brought up to Area 1. Defendant further stated that the statement he was giving did not have anything to do with what happened to his eye. Defendant then proceeded to give a detailed account of the events leading to Diamond's death.

5

Youth investigator Michael Nolan testified that on February 9, 2001, he was assigned to defendant's case. After receiving the assignment, he met with Officer Hayes, who had arrested defendant in connection with the aggravated battery of Diamond Clark. He briefly spoke with Officer Hayes and defendant and then went to the hospital to check the condition of the victim. After arriving back at Area 1, he noticed that defendant was still downstairs in the 2nd District interview room with Officer Hayes. Investigator Nolan and Detectives Zalatoris and O'Connell walked in the interview room to speak with Officer Hayes. Investigator Nolan noticed that the left side of defendant's face, around his eye, was swollen. Defendant told Investigator Nolan that while he was being processed in the lockup, one of the lockup personnel struck him in the face. Officer Hayes informed him that the Office of Professional Standards was contacted regarding defendant's injury. Defendant was then brought to Area 1 and was placed in an interview room. Defendant's mother was called and subsequently arrived at the station. At 9:08 p.m., Investigator Nolan had a conversation with defendant while his mother was present. Defendant was "Mirandized" and agreed to give a statement. Defendant later gave another statement after being confronted with evidence of several bruises and bite marks on his daughter's body. Assistant State's Attorney Heil was then called in and defendant later gave a videotaped statement wherein he inculpated himself in the death of Diamond Clark.

After hearing all of the evidence, the trial court denied defendant's motion, stating:

"The evidence is overwhelming that he was advised of his rights,

6

understood his rights, was not threatened or coerced in any manner to give a statement implicating himself regarding the death of his daughter.

Based on the totality of the circumstances, all of those involved with the taping of the defendant's statement, this Court finds that it was given freely and voluntarily and not in violation of any of the defendant's constitutional rights."

Defendant argues that the trial court erred in denying his motion to suppress where the State failed to prove by clear and convincing evidence that defendant's eye injury was not inflicted in order to obtain a confession.

When a defendant moves to suppress his confession, the State has the burden of establishing that the confession was voluntary. *People v. Woods*, 184 Ill. 2d 130, 145 (1998). A confession is voluntary when, based on the totality of the circumstances, the accused's will was not overborne at the time he confessed. *People v. Kincaid*, 87 Ill. 2d 107, 117 (1981). In determining the voluntariness of a confession, the court considers the totality of the circumstances, including the defendant's age, intelligence, background, experience, mental capacity, education, physical condition, and experience with the criminal justice system, the legality of the detention, the duration of the detention, the duration of questioning, and any promises, threats, deceit, and physical or mental abuse by police. *People v. Gilliam*, 172 Ill. 2d 484, 500-01 (1996). When the defendant is a juvenile, additional factors such as whether a parent or other interested adult was present are considered important in determining the voluntariness of a confession, but no one fact is dispositive. *People v. Haynie*, 347 Ill. App. 3d 650, 653 (2004). Because the taking of a juvenile's confession is a sensitive concern, "the

'greatest care' must be taken to assure that the confession was not coerced or suggested that ' "it was not the product of ignorance of rights or of adolescent fantasy, fright or despair." '[Citations.] *In re G.O.,* 191 Ill. 2d 37, 54 (2000).

If, however, a defendant establishes that he was injured while in police custody suggesting that the confession was involuntarily given, the State must show by clear and convincing evidence that the injuries were not inflicted as a means of obtaining the confession. *People v. Wilson*, 116 Ill. 2d 29, 40 (1987). In determining whether a confession was given voluntarily, a court of review will give great deference to the trial court's factual findings and will reverse those findings only if they are against the manifest weight of the evidence. *In re G.O.*, 191 Ill. 2d at 50.

In *People v. Wilson*, 116 Ill. 2d 29 (1987), the defendant filed a motion to suppress his confession wherein he alleged that police officers physically and verbally abused him in order to produce his confession to the murder of two Chicago police officers. The trial court denied his motion. Our supreme court determined that the State did not establish by clear and convincing evidence that the defendant's injuries were not inflicted as a means of obtaining a confession because "[a]lthough the State presented evidence that could account for when some of the defendant's facial injuries occurred, the others were not explained, and with respect to those injuries, the State essentially relied on a mere denial of coercion." *Wilson*, 116 Ill. 2d at 41. Consequently, the defendant's cause was remanded for a new trial. *Wilson*, 116 Ill. 2d at 41-42.

In *People v. Traylor*, 331 Ill. App. 3d 464 (2002), the defendant argued that his confession should be suppressed because he was injured while in police custody.

8

Photographs of the defendant showed bruising on his nose that was not present prior to an interrogation. The *Traylor* court found that once the defendant established that he was injured while in police custody, the State was required, as outlined in *Wilson*, to prove by clear and convincing evidence that the defendant's injuries were not inflicted as a means of producing a confession. The court found that the State failed to meet its burden because the defendant was in the presence of officers or in a single-person cell from the time of his arrest until the time of his booking photograph, which showed an injury on the bridge of his nose. The State should have been able to prove whether the defendant sustained his injuries before or after his confession, as well as the cause of his injuries but could not and therefore failed to meet its burden. *Traylor*, 331 Ill. App. 3d at 470.

Unlike *Wilson* and *Traylor*, there is no dispute in this case that defendant was injured while in police custody and that the injury was sustained prior to his videotaped confession. The only question that must be answered here is whether the State has shown by clear and convincing evidence that defendant's injury was not related in any way to his confession. The State claims that it has met it's burden because the evidence established that defendant's eye was injured while he was in the lockup in the 2nd District and not while he was being interrogated.

The facts of *People v. Woods,* 184 Ill. 2d 130 (1998)*,* are similar to the facts of this case. In *Woods*, as in the case at bar, it was undisputed that the defendant had sustained injuries to his face while in police custody. From the time the defendant arrived at the police station until he was booked and photographed three days later, the

9

defendant was either in the presence of police officers or in a single-person holding cell. The defendant moved to suppress his confession on the basis that it was involuntary. Our supreme court held that given that the defendant was in police custody, the State should have been able to prove whether the injuries he sustained occurred before or after his confession, as well as the cause of the injuries. *Woods*, 184 Ill. 2d at 150. The *Woods* court ultimately ruled that the defendant's confession should have been suppressed because the State failed to adduce clear and convincing evidence as to when or how the defendant was injured, or that the defendant's injuries were unrelated to his confession. *Woods*, 184 Ill. 2d at 150.

Likewise here, the State failed to meet its burden to show that defendant's injuries were unrelated to his confession. The State's witnesses for the motion to suppress consisted of police officers who denied that defendant's confession was coerced. The detectives and youth investigator testified that defendant had a swollen left eye when they began their interview. When they asked defendant about the injury, they claim that defendant notified them that he had been punched in the face while in the lockup. Not one of them attempted to elicit additional information from defendant regarding his injury, nor did any notation of the injury appear in any reports. There simply was no evidence presented by the State at the hearing on the motion that explained how or why defendant was injured in police custody.

The State urges that defendant himself admitted in his videotaped statement that he was punched in the eye in the lockup. Assuming that defendant was injured while in the lockup, here, we have a somewhat unintelligent, unsophisticated juvenile who has

10

been injured while in police custody after being arrested on suspicion of murder. After being arrested, defendant was not free to leave and was therefore at the mercy of the police personnel involved in this case. We are not convinced that, *given the facts of this case*, defendant would be able to separate the fear associated with being punched by police personnel from any subsequent interactions with police officers or detectives involved in this case. In addition, it is particularly troubling that personnel from the Office of Professional Standards were prevented from speaking with defendant regarding his injury until after defendant gave the videotaped statement. Consequently, we are not convinced that the injury defendant suffered did not ultimately result in the statement wherein he inculpated himself in the death of his daughter. *In re G.O.,* 191 Ill. 2d 37, 54 (2000).

Although the State claims that defendant was repeatedly "Mirandized", did not complain of any pain from his eye injury and did not request medical treatment, we find these facts irrelevant to the ultimate issue. Defendant's conviction must be reversed and remanded for a new trial because the use of a coerced confession is never harmless error. *Wilson*, 116 Ill. 2d at 41-42. As this issue is dispositive, we need not reach defendant's remaining claims.

Based on the foregoing, the judgment of the trial court is reversed and the cause is remanded for a new trial.

Reverse and remand.

SOUTH and HALL, J.J., concur.