**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 220410-U

Order filed May 29, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-22-0410 Circuit No. 01-CF-88 |
| | ) | |
| CHRISTOPHER SCOTT, | ) ) | Honorable Carmen J. Goodman, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE PETERSON delivered the judgment of the court.
Justices Holdridge and Davenport concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  The court erred by denying defendant leave to file a successive postconviction petition.

¶ 2     Defendant, Christopher Scott, appeals the Will County circuit court's order denying him leave to file a successive postconviction petition. Defendant argues that he established cause and prejudice for the failure to previously bring his claim that his confession was coerced. He further argues that, if this court disagrees, the matter should be remanded for further proceedings because

his appointed postconviction counsel provided unreasonable assistance. We reverse and remand for further proceedings.

¶ 3                                    I. BACKGROUND

¶ 4        Defendant was charged with three counts of first degree murder (720 ILCS 5/9-1(a)(2), (a)(3) (West 2000)) and one count each of armed robbery (*id.* § 18-2(a)) and residential burglary (*id.* § 19-3). The charges stemmed from the murder of Delores Bland. Defendant filed a motion to suppress statements he made to police. Defendant alleged that the statements were coerced and that he was not given proper *Miranda* admonishments.

¶ 5        The facts regarding the hearing on the motion to suppress were detailed in this court's order from defendant's direct appeal and will not be set forth in their entirety here. See *People v. Scott*, 3-04-0599 (2007) (unpublished order under Illinois Supreme Court Rule 23). As relevant here, detective Michael Guilfoyle and sergeant Eddie Bradley interviewed defendant on January 12, 2001, in Denver, Colorado, where defendant was held on unrelated charges. Guilfoyle and Bradley testified that defendant was very cooperative and they denied there was any physical assault of defendant. They further testified that defendant was read his *Miranda* rights. Defendant testified that he was told to sign a form which he later found out was the *Miranda* rights and he was not informed of those rights at any time. Defendant also testified that Bradley yelled at him and beat him, including hitting him in the face hard enough to knock out a cap and break his tooth. Further, defendant testified that Guilfoyle kicked him in the knee and that the officers told him his dad was facing the death penalty for Bland's murder. Defendant testified that following the beating, he agreed to say what the officers wanted him to say. The court denied the motion to suppress. Following a stipulated bench trial, defendant was found guilty and sentenced to 48 years'

imprisonment for murder, 21 years' imprisonment for armed robbery, and 10 years' imprisonment for residential burglary.

¶ 6   On direct appeal, defendant appealed the denial of his motion to suppress his confession and this court affirmed. See *id.* Defendant filed an unsuccessful postconviction petition in 2008. See *People v. Scott*, 3-08-0799 (2010) (unpublished order under Illinois Supreme Court Rule 23). He filed a motion for leave to file a successive postconviction petition that was denied in March 2010. See *People v. Scott*, 3-10-0242 (2011) (unpublished dispositional order). Defendant also filed various unsuccessful petitions for relief from judgment and for a writ of *mandamus* from 2014 to 2017. See *People v. Scott*, 3-14-0582 (2015) (unpublished minute order); *People v. Scott*, 3-14-0738 (2016) (unpublished dispositional order); *People v. Scott*, 3-15-0240 (2017) (unpublished dispositional order); *People v. Scott*, 3-16-0545 (2018) (unpublished dispositional order); *People v. Scott*, 3-17-0353 (2017) (unpublished dispositional order).

¶ 7   In 2020, defendant filed, as a self-represented litigant, a motion for leave to file a successive postconviction petition along with the successive postconviction petition. He also filed various amended motions and petitions. Defendant alleged that he had newly discovered evidence of police misconduct that warranted reconsideration of his motion to suppress. Defendant alleged that there was cause and prejudice as required for him to obtain leave to file the successive petition. Specifically, defendant argued that there was cause because the new evidence showed that Guilfoyle was found liable for police misconduct and it was not available at the time of his original postconviction petition. As to prejudice, he alleged that the new evidence undermined Guilfoyle's credibility and character and showed he was untrustworthy and unreliable. The evidence was not available at the time of the motion to suppress for defendant to be able to cross-examine, confront, and impeach Guilfoyle with his misconduct. He argued this led to him being denied a fair trial and

3

that the admission of a coerced confession is never harmless error. Further, defendant argued that the new evidence was of such a conclusive character that if heard, would likely result in a different outcome.

¶ 8        The allegedly new evidence attached to the motion/petition consisted of the case *Fox v. Hayes*, 600 F. 3d 819 (2010), which was decided in April 2010. Defendant analogized the *Fox* case with the allegations in his case. In the *Fox* matter, Guilfoyle and other Will County detectives were sued by Kevin Fox and were found liable for false arrest and intentional infliction of emotional distress. *Id.* at 825. The lawsuit stemmed from the interrogation and arrest of Fox following the murder of his daughter, Riley. *Id.* In its written opinion, the *Fox* court noted that during the trial the defendants and Fox presented very different versions of events surrounding Fox's arrest. *Id.* at 826. The court detailed Fox's version of events and in doing so, stated that during an interrogation of Fox in October 2004, Scott Swearengen accused Fox of killing Riley. *Id.* at 826, 829-30. Fox tried to leave but Brad Wachtl told him to sit down. *Id.* at 830. Wachtl and Swearengen yelled that they knew Fox killed Riley and falsely stated they had incriminating fiber evidence. *Id.* Later, detective Edward Hayes told Fox that he knew people in prison and would make sure inmates raped Fox every day. *Id.* Then Guilfoyle banged handcuffs on the table in front of Fox, screamed at him, and called him a "pussy". *Id.* at 831. Guilfoyle also threw a magnet reading "Riley in our Heart" "on the table in front of [Fox] and yelled that Riley was on her knees begging [Fox] to admit what he did and give her closure." *Id.* Fox felt that he had to go along with the version of events stated by defendants and admitted to killing Riley by accident. *Id.* DNA evidence recovered from Riley did not match Fox and the charges against him were dropped. *Id.* at 832.

¶ 9        Additionally, defendant cited to and analogized another case involving Guilfoyle, *People v. Traylor*, 331 Ill. App. 3d 464 (2002). In that matter, Quentin Traylor alleged that Will County sheriff's investigators Terri Paggi and Edward Hayes coerced his confession by physically abusing him. *Id.* at 465-66. He also alleged that he was not verbally given *Miranda* rights and was provided a form to sign. *Id.* at 466. He alleged that the officers tripped him, hit him in the nose and ribs, and squeezed his genitals. *Id.* Photographs from the day after the interview and five days after the interview showed bruising to Traylor's nose. *Id.* at 468. Guilfoyle observed part of Traylor's interview but testified that he did not see Traylor being struck by the officers interrogating him. *Id.* at 467. This court determined that Traylor's confession should have been suppressed because he was injured in police custody and the State failed to prove the injuries were unrelated to his confession. *Id.* at 468, 470.

¶ 10       Defendant argued that the *Fox* and *Traylor* cases showed a pattern of misconduct and coercion by Guilfoyle and that Guilfoyle failed to stop coercion by other detectives such that he was as guilty as the other detectives who played major roles in the coercion. Defendant also summarily alleged that Guilfoyle was fired, tried to commit suicide, and had other pending cases. He alleged that he lacked funds to obtain additional evidence.

¶ 11       The court appointed the public defender's office to represent defendant on his motion for leave. The court denied him leave to file the successive postconviction petition. Defendant appeals.

¶ 12                                              II. ANALYSIS

¶ 13       Defendant argues that the court erred by denying him leave to file his successive postconviction petition because he established cause and prejudice. Specifically, he argues that there was cause for his failure to bring his claim regarding his coerced confession earlier because the evidence related to Guilfoyle's involvement in the *Fox* case did not exist until after his trial

5

and after his initial postconviction petition. He further agues that he established prejudice because with the new evidence of Guilfoyle's misconduct, the result of his suppression hearing would likely be different.

¶ 14        The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)) provides a three-stage process for individuals under a criminal sentence to assert that their convictions resulted from a substantial denial of their rights under the United States Constitution, the Illinois Constitution, or both. *People v. Hodges*, 234 Ill. 2d 1, 9-10 (2009). "[A] defendant must obtain leave of the trial court before he may obtain review of a second or subsequent postconviction petition on its merits." *People v. McDonald*, 405 Ill. App. 3d 131, 135 (2010). Leave of court can only be granted if defendant demonstrates cause for failing to bring the claim in the initial postconviction petition and prejudice from that failure. 725 ILCS 5/122-1(f) (West 2020). "[A] prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings." *Id.* Prejudice is "an error which so infected the entire trial that the defendant's conviction violates due process." *McDonald*, 405 Ill. App. 3d at 135. "[L]eave of court to file a successive postconviction petition should be denied when it is clear, from a review of the successive petition and the documentation submitted by the petitioner, that the claims alleged by the petitioner fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings." *People v. Smith*, 2014 IL 115946, ¶ 35. "At the pleading stage for motions for leave to file, all well-pleaded allegations in the petition and supporting affidavits are to be taken as true." *People v. Blalock*, 2022 IL 126682, ¶ 48. The denial of leave to file a successive postconviction petition is reviewed *de novo*. *Id.* ¶ 38.

¶ 15        "[N]ewly discovered evidence of police coercion may, depending on the individual circumstances of the case, provide cause for permitting the filing of a successive postconviction petition." *People v. Vidaurri*, 2023 IL App (1st) 200857, ¶ 39. "Where, as here, the claim of prejudice rests on new evidence, the petitioner must show that his supporting evidence is of 'such conclusive character that it will probably change the result upon retrial.' " *People v. Jackson*, 2021 IL 124818, ¶ 31 (quoting *People v. Patterson*, 192 Ill. 2d 93, 139 (2000)). New evidence of a pattern and practice of police misconduct can be relevant to a defendant's claim that his confession was coerced. *Id.* ¶ 32. "[S]imilarity is a critical factor to consider when determining whether new evidence of police misconduct in other cases establishes a pattern and practice of certain behavior. However, the test is not one of exact or perfect identity." *Id.* ¶ 34.

¶ 16        First, we conclude that defendant established the requisite cause for failing to bring his claim in his initial postconviction petition because the *Fox* case was not available until after his first postconviction petition had been decided. The unavailability of the *Fox* case was an external factor that hindered defendant's ability to bring this claim in the initial postconviction petition.

¶ 17        Turning to prejudice, while admittedly a close call, we conclude that defendant has provided enough evidence to justify further proceedings. Specifically, the *Fox* case, is new evidence of misconduct by Guilfoyle as Guilfoyle was found liable for false arrest and intentional infliction of emotional distress in that matter for his conduct during the interrogation of Fox. *Fox*, 600 F. 3d at 825. In that matter, according to the evidence as set forth in the written opinion, Fox tried to end his interrogation but Will County sheriff's deputies refused to allow him to leave. *Id.* at 830. During the interrogation, investigator Hayes, in the presence of Guilfoyle, threatened to have Fox raped every day in prison. *Id.* at 830-31. After that threat was conveyed, Guilfoyle screamed at Fox, called him a pussy, and slammed handcuffs on the table in front of him. *Id.* at

7

831. Guilfoyle also threw a magnet that had "Riley in our Heart" written on it in front of Fox and yelled that Riley was on her knees begging him to admit what he did. *Id.* Guilfoyle was not involved in the entire interrogation of Fox and did not appear to be the lead investigator. *Id.* at 829-31. While these actions are not exactly the same as alleged in the case at bar, they are arguably similar. Defendant alleged being struck in the face, kicked in the knee, being told his father would get the death penalty for the murder and not being informed of *Miranda* rights. The coercive nature of Guilfoyle's actions in conjunction with another investigator's actions, is similar enough to make the *Fox* case relevant. Notably, in *Fox*, Guilfoyle's actions were done in conjunction with Hayes's threats and in this case, defendant alleged that Guilfoyle's conduct in kicking him in the knee was in conjunction with Bradley's physical assault of him. Essentially the evidence indicates that Guilfoyle may act in furtherance of other officers' coercive tactics.

¶ 18    Additionally, the court in *Traylor* found that the State failed to prove that Traylor was not injured in police custody. 331 Ill. App. 3d at 468. Guilfoyle was not alleged to have directly participated in physically assaulting Traylor; however, he observed parts of the interrogation and testified he did not see anyone strike Traylor. *Id.* at 467. This court found that photographs subsequent to the interrogation showed an injury to Traylor's nose. *Id.* at 468. Although *Traylor* was available at the time of defendant's suppression hearing and there was no direct finding of misconduct or lack of credibility related to Guilfoyle, his involvement in that matter may be viewed in a different light due to the *Fox* case. This is especially so considering that the *Fox* court made clear that the defendants' testimony, which would have included Guilfoyle's, differed considerably from Fox's (see 600 F. 3d at 826), indicating a lack of credibility on Guilfoyle's part. Considering Guilfoyle's conduct in *Fox*, as well as the allegations in *Traylor* and the instant matter, we believe that defendant has presented enough evidence to indicate there may be a pattern and practice of

8

coercion by Guilfoyle. Thus, the allegations in defendant's motion and petition effectively plead prejudice and the court should have allowed him leave to file his postconviction petition on this issue. Therefore, we reverse the circuit court's denial of leave and we remand the matter for second stage proceedings. See *People v. Wrice*, 2012 IL 111860, ¶ 90 (remanding for appointment of postconviction counsel and second-stage proceedings when reversing the circuit court's denial of leave to file a successive postconviction petition). In light of our disposition of this issue, we need not address defendant's contention that he received unreasonable assistance of postconviction counsel.

¶ 19                                    III. CONCLUSION

¶ 20        The judgment of the circuit court of Will County is reversed and the matter is remanded.

¶ 21        Reversed and remanded.