THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HELIBERTO CARRERO, Defendant-Appellant.

First District (2nd Division)   No. 1—01—0164

Opinion filed December 9, 2003.

2

Rita A. Fry, Public Defender, of Chicago (Pamela Leeming, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Annette

Collins, and Clare Wesolik Connolly, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GARCIA delivered the opinion of the court:

Following a jury trial, the defendant, Heliberto Carrero, was found guilty of aggravated vehicular hijacking in violation of section 18—4(a)(3) of the Criminal Code of 1961 (720 ILCS 5/18—4(a)(3) (West 1998)), armed robbery in violation of section 18—2(a) (720 ILCS 5/18—2(a) (West 1998)), and two counts of unlawful use of a weapon (possessing a shotgun with a barrel of less than 18 inches and possessing a firearm while masked) in violation of sections 24—1(a)(7)(ii) and 24—1(a)(9) (720 ILCS 5/24—1(a)(7)(ii), (a)(9) (West 1998)). The defendant was sentenced to 25 years' imprisonment for aggravated vehicular hijacking and armed robbery. A single conviction was entered on the two counts of unlawful use of a weapon and the defendant was sentenced to five years' imprisonment. The sentences were ordered to be served concurrently.

On appeal, the defendant contends: (1) his confession was coerced; (2) the trial court erred in allowing evidence of the defendant's prior unprosecuted arrest at sentencing; (3) the show-up identification was unnecessarily suggestive and unreliable; (4) use of the term "or" in the jury instruction concerning circumstances of identification (Illinois Pattern Jury Instructions, Criminal, No. 3.15 (3d ed. 1992) (hereinafter IPI Criminal 3d No. 3.15)) misstated the law and denied him a fair trial; (5) the trial court erred in permitting testimony about weapons and ammunition that were not connected to the charged offenses; and (6) the 25-year prison sentence was excessive in light of the mitigating factors.

For the following reasons, we affirm the defendant's convictions and sentences.

## BACKGROUND

The defendant was found guilty of the above offenses stemming from a January 6, 1998, incident in which the victim, Ahmed Meraj, was robbed at gunpoint and his car stolen. The victim was in a hardware store parking lot, walking toward the store, when he heard someone say, "Excuse me. Excuse me, I'm talking to you." When the victim turned around, the person speaking was wearing a ski mask and pointing a shotgun at him. The masked person demanded money and the victim's car keys. The victim complied and gave him $1 and the keys to his 1992 gray Toyota Corolla. The robber warned the victim if he moved, the robber would shoot him. As the robber was leaving, he told the victim not to tell anyone and that the victim could pick his car up from this same parking lot the next day.

After the robber left, the victim called the police. Minutes later, Officers Kenneth Ritter and Jesse Santiago arrived at the hardware store. The victim described the robber as 6 feet tall, 180 pounds, wearing blue jeans and a black stocking cap. The victim was not entirely sure of the color of the robber's jacket, but described it as brown. Because of the mask, the victim was not able to provide the robber's eye color, hair color, or complexion.

While the victim was with Officers Ritter and Santiago, Officers Joseph Giambrone and Adam Henkels were patrolling the area in a marked squad car when they received a bulletin regarding the robbery, which included a description of the car and its license plate number. On their patrol they saw a vehicle matching the description of the stolen car. As the officers approached the car, the driver, identified at trial as the defendant, backed up the car toward the officers and drove off in reverse. The police pursued. Officers Robert Braun and Larry Guy joined the chase. During the pursuit, Officers Giambrone and Henkels saw the defendant throw a sawed-off shotgun out of the car.

Eventually, the defendant stopped the car, jumped out, and ran. The officers gave chase. As Officer Giambrone ran past the stolen car, he made a cursory search for individuals and saw a black bag in the rear seat. Officer Braun, after securing the police vehicles, entered the stolen car to turn off its engine. At that time, he too saw the black bag and noticed a rifle barrel sticking out of the bag. When Officer Braun opened the bag, he discovered two long-barreled rifles inside, along with ammunition. The rifles were loaded.

The officers eventually caught the defendant. Officer Henkels grabbed him first and the two fell to the ground in a gangway with the defendant under Officer Henkels. The defendant continued to struggle with the officers until they were able to handcuff him and get him to his feet. The officers recovered a blue ski mask from inside the defendant's brown jacket. Officer Giambrone informed the defendant of his *Miranda* rights (*Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966)) and radioed that they had the suspect in custody. This was 15 to 20 minutes after the car was initially stolen. Officers Ritter and Santiago, after hearing over the police radio that a suspect in the robbery had been apprehended, transported the victim to where the arresting officers were holding the suspect. At the show-up, the police asked the victim if the detained individual (the defendant) was the person who robbed him. The victim stated that the defendant looked like the same man in terms of build and clothes. At the time of arrest the defendant was wearing a tan or brown jacket and jeans.

At the show-up, the defendant was the only person the police asked the victim to view. According to Officer Giambrone, at the time of the show-up the defendant was handcuffed and a police officer detained the defendant by one hand and held a mask in the other. Additionally, according to Officers Henkels and Ritter, a flashlight illuminated the defendant for the victim to see.

At the police station, the victim was shown the rifles and ammunition found in the black bag in the recovered car. The victim stated he had never seen the rifles or ammunition before. The victim was also shown the recovered sawed-off shotgun the defendant threw out of the car during the chase. The victim identified the gun as the one used in the robbery.

While in custody, the defendant made three inculpatory statements. The first occurred while he was being fingerprinted. The defendant told Officer Guy, "[y]ou know, I never shot that guy. I just robbed him with the gun and took his car." The second statement was during an interview conducted by Detective John Turney. Detective Turney introduced himself and advised the defendant of his constitutional rights. The defendant acknowledged his rights, then said he wanted to talk about his arrest. The defendant told Detective Turney that he wanted to get rid of some guns but his friend would not give him a ride so he decided to get a car. He went to the hardware store's parking lot, put on a ski mask, approached a man and asked for some money and the man's car keys. The defendant told the man he could pick up his car the next day from the same parking lot. The defendant then drove back to his friend's house to pick up the guns. Shortly after retrieving the guns, the defendant saw police officers pull up in a car next to him and he decided he had to get away. During his flight, the defendant threw the sawed-off shotgun out of the car because he was afraid that if he was found in possession of it, the "feds" would get involved. The final statement occurred during the interview of the defendant by Assistant State's Attorney (ASA) Sara Roth. The defendant repeated what he had stated to Detective Turney to ASA Roth in the presence of Detective Turney.

Prior to trial, the defense moved to suppress the defendant's statements, claiming his confession was coerced by Officer Michael Rice, who the defendant claimed was the arresting officer. The defense also moved to suppress the show-up identification and exclude testimony regarding the recovered rifles and ammunition. The trial court ruled the confession was voluntary and the identification was proper. Regarding the rifles and ammunition, the court permitted testimony that the defendant claimed ownership of the items but disallowed testimony that he wanted to trade them for drugs.

At sentencing, the State introduced evidence of a prior, unprosecuted arrest for murder. The defense objected and, at least initially, the trial court sustained the defendant's objection. The State argued that the unprosecuted arrest for murder was proper aggravation under the case law provided to the trial court. The trial judge ultimately allowed the evidence, although he stated that the sentences imposed were warranted even in the absence of the contested aggravation. We address each of the defendant's asserted errors in order.

## ANALYSIS

### I. The Defendant's Confession

The defendant claims his confession was coerced by Officer Rice who, according to the defendant, repeatedly beat him with his hands, knees, and a telephone book, and threatened to put him in the hospital if he did not cooperate. A pretrial hearing was held on the defendant's motion to suppress statements. In support of his claim, the defendant submitted four photographs taken the day after his arrest, two of which clearly show bruising and scabbing on each side of his face.

■ When a defendant challenges the admissibility of his confession, alleging his confession was coerced, the prosecution has the burden of establishing the voluntariness of the confession by a preponderance of the evidence. *People v. Barragan*, 266 Ill. App. 3d 961, 971, 641 N.E.2d 535 (1993). However, the standard is heightened where it is either conceded or clearly established that the defendant received injuries while in the custody of the police. *Barragan*, 266 Ill. App. 3d at 971. Once a defendant establishes that his injuries occurred while in police custody, the prosecution must then establish by clear and convincing evidence that the injuries were not inflicted as a means of producing the confession. *Barragan*, 266 Ill. App. 3d at 971. Furthermore, the prosecution must supply " 'more than the mere denial by the State's witnesses that the confession was coerced' " in order to meet the heightened burden of proof. *People v. Woods*, 184 Ill. 2d 130, 146, 703 N.E.2d 35 (1998), quoting *People v. Wilson*, 116 Ill. 2d 29, 40, 506 N.E.2d 571 (1987). At a pretrial hearing where it is established that the defendant's injuries occurred while in police custody, the focus is not upon the credibility of the defendant's account of the injuries he sustained but on "whether the State satisfied its burden to establish by clear and convincing evidence that defendant's injuries were not inflicted as a means of producing defendant's confession." *Woods*, 184 Ill. 2d at 149.

At the motion hearing the State called ASA Roth, Detective Turney, and Officers Giambrone, Guy, Rice, and James Tarara (Officer Rice's partner). Officer Rice testified he monitored the call for the rob-

bery and stolen car. By the time he arrived at the location of the defendant's arrest, the defendant was being placed in a police squad car. Officer Rice and his partner returned to routine patrol until approximately an hour later when they returned to the 17th police district. Officer Rice saw the defendant in the police district while the defendant was being processed at the lockup. Officer Rice testified he was not one of the arresting officers but had known the defendant for about 17 years. Officer Rice testified he never hit, slapped, or ordered the defendant to sign a written confession at any time following the defendant's arrest.

Officers Guy and Tarara and Detective Turney corroborated Officer Rice's testimony that Officer Rice did not hit, slap, or knee the defendant or hit the defendant in the head with a telephone book. According to the defendant, Rice's partner, Officer Tarara, was present during part of the physical abuse received by the defendant at the hands of Rice. Officer Tarara testified he was never in the basement with the defendant and the first time he saw the defendant that night was when the defendant was at the lockup in the 17th police district. Officer Guy testified that he never heard Officer Rice threaten to harm the defendant or order the defendant to sign a written confession. Additionally, ASA Roth testified she asked the defendant how he had been treated and the defendant responded that everything was fine; the defendant never told her that he was physically abused.

Regarding the photographs of the defendant's face showing bruising and scabbing, Officers Giambrone and Guy, Detective Turney, and ASA Roth all testified that the photographs were not an accurate representation of how the defendant looked the night of his arrest. ASA Roth testified that she did notice dark discolorations under the defendant's eyes the night of the arrest, but she did not notice any redness or scabbing at the time she interviewed the defendant. Officer Giambrone testified the defendant had an abrasion, "some kind of redness" on his face that was "attributed to [the defendant's] struggle on the ground with [the officers]." Detective Turney testified the defendant did not have anything he would call "an outstanding injury," but the defendant might have had some blemishes or bruises. Similarly, Officer Guy testified he did not recall the defendant looking like the defendant did in the photographs, but he could not say the defendant did not have any type of physical injury to his face.

The defendant testified at the pretrial hearing. The defendant claimed that he was walking down the street when he observed Officer Rice in his squad car. Because he had had past altercations with Officer Rice, he ran when Officer Rice looked in his direction. According to the defendant, he was arrested by Officer Rice in an alley. He was

then transported by Officer Rice and his partner to another location where he was viewed by the armed robbery/vehicular hijacking victim. The defendant testified that the officer that held him during the show-up (he claimed it was Officer Rice), held a mask in his other hand. He is unsure where the mask came from. According to the defendant, he was then transported to the 17th police district and taken to the basement by Officer Rice. In the basement of the 17th police district, the defendant claims he was physically beaten by Officer Rice in an attempt to have the defendant sign a written confession. According to the defendant, he was "slapped" in the face by Officer Rice, although he could not recall on which side of his face he was hit. The defendant also claimed he was hit with a phone book and kneed by Officer Rice. The defendant admitted he was subsequently interviewed by ASA Roth, who advised him of his *Miranda* rights, which he acknowledged understanding and waiving. He admitted he told her that he committed the armed robbery and car hijacking. At the pretrial hearing, the defendant claimed that Officer Rice threatened he would "end up going to the hospital" if he did not admit to committing the crimes. Although he admitted committing the crimes to ASA Roth, the defendant also claims he told her about being beaten by Officer Rice in order to coerce a confession. The defendant introduced four photographs, two of which clearly showed bruising to each side of the defendant's face. The defendant never signed a written confession.

After hearing all of the testimony and taking into consideration the facts and circumstances that gave rise to the defendant's arrest, the trial court determined the statements were not the product of any physical coercion or beating. Although the trial court made no express finding that the defendant's injuries occurred after coming into police custody, each party presents its argument in the context of the heightened burden of proof.[1]

It is the trial court's duty to resolve conflicting evidence and determine the credibility of the witnesses. *People v. Jones*, 184 Ill. App. 3d 412, 425, 541 N.E.2d 132 (1989). While the trial court was required to find by clear and convincing evidence that injuries

[1]It would be of assistance on review if the ruling below had been expressly made. See *People v. Traylor*, 331 Ill. App. 3d 464, 468, 771 N.E.2d 629 (2002) (where the trial court made an express finding that the defendant was injured while in police custody triggering the heightened burden of proof on the part of the State). But compare *People v. Case*, 218 Ill. App. 3d 146, 155, 577 N.E.2d 1291 (1991) (where the reviewing court held that the trial court did not abuse its discretion in determining that it was not "clearly established" that the injuries suffered by the defendant occurred while in police custody).

sustained by the defendant were not inflicted as a means of producing the oral confession (*Barragan*, 266 Ill. App. 3d at 971), a reviewing court will not disturb the trial court's factual determinations regarding whether a confession is voluntary unless those determinations are against the manifest weight of the evidence (*People v. Traylor*, 331 Ill. App. 3d 464, 467, 771 N.E.2d 629 (2002)). The reviewing court may consider evidence adduced at trial as well as at the suppression hearing. *People v. Caballero*, 102 Ill. 2d 23, 34-36, 464 N.E.2d 223 (1984).

In his main brief, the defendant asserts that while "the State did explain a possible abrasion on one side of the [defendant's] face during the arrest[, the State] failed to explain the rest of the injuries." The State responds that the evidence supports the trial court's implicit finding "that the injuries sustained on both sides of defendant's face were sustained during the struggle to [arrest and] handcuff defendant." We agree with the State that the evidence presented regarding the nature of the injuries sustained by the defendant is not limited to the injuries suffered to only one side of the defendant's face. We have examined the photographs of the defendant that were admitted at the pretrial hearing and find the injuries on each side of his face to be remarkably similar. It appears that even the defendant recognized the similarities of the injuries depicted in the photographs as he claimed at one point during the pretrial hearing that all the injuries were caused by the slaps from Officer Rice, although he also testified he could not recall on which side of his face he was hit. He denied any of the injuries were caused by being hit by a phone book.

At trial, Officers Henkels testified he "tackled" the defendant to the ground and landed on top of the defendant as they fell in the gangway. At the pretrial hearing, Officer Giambrone testified he and Officers Henkels and Guy struggled with the defendant on the ground for "at least a minute" in an effort to handcuff him. After handcuffing the defendant, the officers rolled the defendant over and recovered the ski mask from inside the defendant's jacket. Although each of the State's witnesses disputed that the defendant looked as bruised as he did in the photographs taken the following day, Officer Giambrone provided pointed testimony as to the source of the defendant's injuries. Officer Giambrone testified, "I believe he had some kind of redness that was attributed to his struggle on the ground with us."

The State convincingly argues that the injuries in the photographs are consistent with the defendant having been "tackled" to stop his flight and struggling with three police officers over being handcuffed. Although not necessary for our holding, we agree with the State that one explanation for the defendant's injuries being more prominent in the photographs is that the redness and bruises observed by some of

the officers resulting from the manner of the defendant's arrest did not become fully visible until the next day when the photographs were taken.

■ In light of the reasonable explanation for the defendant's injuries presented through the credible testimony of the State's witnesses, we agree with the trial court's implicit ruling that the State proved by clear and convincing evidence that the injuries were not inflicted as a means of producing the confession. See *Barragan*, 266 Ill. App. 3d at 971. "We find that the manifest weight of the evidence does not require a contrary conclusion to that reached by the trial court." *People v. Case*, 218 Ill. App. 3d 146, 159, 577 N.E.2d 1291 (1991). We therefore reject the defendant's claim that his confession was involuntary.

## II. The Defendant's Prior Unprosecuted Arrest

The material in this section in not publishable under Supreme Court Rule 23.

## III. The Show-Up Identification

The material in this section is not publishable under Supreme Court Rule 23.

## IV. IPI Criminal 3d No. 3.15

■ The jury was given IPI Criminal 3d No. 3.15, governing witness identification, without objection by the defense. The defendant seeks to invoke plain error regarding the trial court's inclusion of the word "or" in listing the various factors to be considered in weighing the identification testimony. The defendant asserts that in so instructing the jury, the jury was misled into believing that only one of the five factors was sufficient for it to determine the credibility of the identification testimony, when, in fact, the jury should consider all factors that are applicable to the evidence in the case. *People v. Gonzalez*, 326 Ill. App. 3d 629, 639, 761 N.E.2d 198 (2001).

IPI Criminal 3d No. 3.15 reads:

"3.15 Circumstances of Identification

When you weigh the identification testimony of a witness, you should consider all the facts and circumstances in evidence, including, but not limited to, the following:

■ The opportunity the witness had to view the offender at the time of the offense.

[or]

■ The witness's degree of attention at the time of the offense.

[or]

■ The witness's earlier description of the offender.

[or]

■ The level of certainty shown by the witness when confronting the defendant.

[or]

■ The length of time between the offense and the identification confrontation."

In instructing the jury, both orally and in written form, the trial court's instruction was essentially verbatim from IPI Criminal 3d No. 3.15. Similarly, during closing argument, the prosecution told the jurors that when weighing the identification testimony of a witness, they should consider all the facts and circumstances in evidence and listed the five factors of IPI Criminal 3d No. 3.15, including the "or" between the last three factors. The State then addressed each of these factors in light of the evidence presented at trial. The written instruction, the oral instructions from the court, and the prosecution's statements in closing argument all mirror IPI Criminal 3d No. 3.15 with two exceptions; the bracketed numbers were correctly excluded, but the bracketed "or" was included.

In this case, we first examine the alleged mistake in instructing the jury to determine whether error occurred. If so, we then determine whether the jury instruction error rose to the level of plain error because the error was not properly preserved at trial. See *People v. Herrett*, 137 Ill. 2d 195, 210, 561 N.E.2d 1 (1990). While one appellate court recently held that the inclusion of the bracketed "or" in IPI Criminal 3d No. 3.15 in the instruction given to the jury is not error (*People v. Tisley*, 341 Ill. App. 3d 741, 793 N.E.2d 181 (2003)), this holding fails to address the numerous cases holding the bracketed "or" in the jury instruction is designed solely for the guidance of the court and counsel and including the bracketed "or" in the instruction to the jury is error (*Gonzalez*, 326 Ill. App. 3d at 639; *People v. Smith*, 341 Ill. App. 3d 530, 546, 794 N.E.2d 367 (2003); *People v. Saraceno*, 341 Ill. App. 3d 108, 115-16, 791 N.E.2d 1239 (2003); *People v. Brookins*, 333 Ill. App. 3d 1076, 1083, 777 N.E.2d 676 (2002); *People v. Mercado*, 333 Ill. App. 3d 994, 999, 777 N.E.2d 641 (2002); *People v. Furdge*, 332 Ill. App. 3d 1019, 1032, 774 N.E.2d 415 (2002); *People v. Waters*, 328 Ill. App. 3d 117, 130-31, 764 N.E.2d 1194 (2002)). In keeping with the view of the majority of the cases, we too hold that including the bracketed "or" when giving the jury IPI Criminal 3d No. 3.15 is error.[2]

Having determined that the trial court erred in so instructing the

_____

[2]In declining to follow *Tisley*'s approach to find no error in the instruction

jury, the next question is whether the error rises to the level of plain error. Substantial defects in jury instructions in criminal cases may be noticed despite failure to make a timely objection thereto if the interests of justice so require. 177 Ill. 2d R. 451(c). The exception will be invoked to correct grave errors or in cases "so close factually that fundamental fairness requires the jury be properly instructed." *People v. Berry*, 99 Ill. 2d 499, 505, 460 N.E.2d 742 (1984), citing *People v. Huckstead*, 91 Ill. 2d 536, 544, 440 N.E.2d 1248 (1982).

The defendant relies solely on the recent case of *Gonzalez*, 326 Ill. App. 3d 629, 761 N.E.2d 198, for his claim that plain error occurred here. As the *Gonzalez* court premised its reversal on that case being factually close, the defendant likewise asserts that "the evidence against him was not overwhelming."[3] We disagree. The victim gave an accurate description of the offender that robbed him at the point of a sawed-off shotgun and stole his car. The victim's immediate outcry included the license plate number of his car, which led to the ap-

---

given in this case, we remain mindful of the concerns expressed in *Gonzalez*. In any given witness identification case, not every factor listed in the instruction may have relevance as determined by the evidence. In a given case, to insert an identification factor that has no application as determined by the evidence may indeed confuse a jury. Or, every factor listed in the instruction may specifically apply, such as where the prosecution's "case [is] based solely on circumstantial evidence through the identification testimony" of the eyewitnesses. *Gonzalez*, 326 Ill. App. 3d at 635. In such a case, to suggest that any one of the factors may be sufficient to weigh the identification testimony may undermine the required showing of proof beyond a reasonable doubt. *Gonzalez* stands for such a case.

We are also mindful of the simple steps that can be taken to avoid this issue on appeal. It is a simple matter for the State to eliminate the bracketed "or" just as it does the bracketed "numbers" in the "clean" instruction to be given to the jury. Defense counsel as well must give serious thought to the identification instruction (as with all other instructions) to ensure that the jury is properly guided in assessing the evidence against the defendant. The trial court, of course, bears ultimate responsibility in instructing the jury and should ensure that each instruction conforms to the IPI and aids the jury in resolving the ultimate issue of the presence or absence of reasonable doubt. The correct instruction is set out in *Gonzalez* and, as *Gonzalez* notes, in Illinois Pattern Jury Instructions, Criminal, Sample Set 27.02, No. 3.15 (4th ed. 2000). In our judgment, this issue comes before us (unnecessarily) too often.

[3]There is a real question whether the defendant's claim that the evidence against him was "not overwhelming" is equivalent to the "factually close" standard required by the case law. See *People v. Nieves*, 192 Ill. 2d 487, 502-03, 737 N.E.2d 150 (2000). We nonetheless address the defendant's claim.

prehension of the defendant 15 to 20 minutes after the crime. The defendant was seen driving the stolen car by four officers, two of whom saw the defendant toss a shotgun out the car window as he fled in the stolen car. The mask, identified by the victim as worn by the robber, was recovered from the jacket the defendant was wearing at the time of his arrest. The sawed-off shotgun, discarded by the defendant from the stolen car, was also identified as the one used to commit the crimes. The defendant was identified by the victim by his appearance as the offender. The victim's car had two rifles and ammunition not owned by the victim but consistent with the defendant's admissions that he was attempting to transport weapons to another location. Finally, the defendant admitted to the crimes three separate times. Not only was the evidence not "close," we find the evidence overwhelming even apart from the defendant's admissions. See *Berry*, 99 Ill. 2d at 505 (the evidence must be so factually close that fundamental fairness requires the jury be properly instructed).

Additionally, we find no serious claim that the defendant was denied a fair trial based on the giving of the instruction which in only the strictest sense was incorrect. Even though the prosecutor included the bracketed "or" when discussing IPI Criminal 3d No. 3.15 in closing arguments, the prosecutor here, unlike in *Gonzalez*, did not draw undue attention to the term "or" in the instructions. Instead, the prosecutor started by telling the jury to consider all relevant identification factors and finished by correctly arguing to the jury that it was to consider all five of the factors in evaluating the eyewitness's testimony. Given that the evidence was not closely balanced, that the prosecution argued all five factors as supported by the evidence, and that neither the judge nor the prosecution drew undue attention to the term "or," the defendant cannot show that he was prejudiced by the erroneous instruction and this court cannot find that the result of the proceedings would have been different had the jury been given a proper instruction. See *Mercado*, 333 Ill. App. 3d at 1000. Because we find the error "not to rise to the level of a plain error[,] *** the procedural default must be honored." *People v. Keene*, 169 Ill. 2d 1, 17, 660 N.E.2d 901 (1995). We therefore find the issue forfeited.

## V. Rifles and Ammunition

Prior to trial, the defense moved to exclude testimony regarding the rifles and ammunition recovered from the victim's car claiming this evidence was overly prejudicial because the rifles were not used in the robbery and the ammunition was unsuitable for the gun that was used. The State argued this evidence was admissible to corroborate the defendant's statement that he hijacked the car to transport the

weapons and to rebut the defendant's argument that he was never inside the victim's car. The trial court denied the defendant's motion, finding the rifles and ammunition probative. However, the trial court did not allow the State to introduce the defendant's statement that he was going to trade these guns for drugs. At trial, as part of the details of the arrest, the State elicited testimony that the rifles were in firing condition and were loaded. The trial court overruled the defendant's objection that this testimony was irrelevant. During deliberations, the two rifles and the box of ammunition were allowed to go back to the jury room.

The defendant's claim of error regarding the rifles and ammunition is twofold: the trial court erred in (1) admitting evidence regarding the rifles and ammunition, and (2) the trial court erred in allowing the guns and ammunition to go back to the jury room during deliberations.

Both the admission of other crimes evidence and the decision to allow exhibits to be taken to the jury room are reviewed for an abuse of discretion. *People v. Babiarz*, 271 Ill. App. 3d 153, 159, 648 N.E.2d 137 (1995). "When the trial court finds some relevance in the other crimes evidence, it must then conduct a balancing test. Relevant evidence should be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." *People v. Jones*, 328 Ill. App. 3d 233, 238, 764 N.E.2d 1232 (2002), citing *People v. Stewart*, 105 Ill. 2d 22, 62, 473 N.E.2d 840 (1984). A trial court's decision to allow exhibits to be taken to the jury room will not be reversed "unless there is an abuse of discretion to the prejudice of the defendant." *People v. McDonald*, 329 Ill. App. 3d 938, 948, 769 N.E.2d 1008 (2002).

"The general rule is that weapons are admissible if connected to both the defendant and the crime." *Babiarz*, 271 Ill. App. 3d at 159. In cases where the weapon used in the offense is not recovered but a weapon is seized from the defendant and suitable for commission of the charged offense, the cases generally hold that a sufficient connection is present. As the State correctly notes in its brief, in cases where the weapon is clearly established or conceded by the State not to be the weapon used in the charged offense, we have acknowledged that the case law reflects "some inconsistency" in assessing whether the admission of such a weapon is reversible error. *People v. Brown*, 100 Ill. App. 3d 57, 69, 426 N.E.2d 575 (1981); *cf. People v. Wade*, 51 Ill. App. 3d 721, 729, 366 N.E.2d 528 (1977).

Under the facts of this case, we have no difficulty finding a sufficient connection to both the defendant and the crimes to conclude that the weapons were properly admitted. The presence of rifles and ammunition in the stolen car corroborated the defendant's statement

to the investigating detective, repeated to ASA Roth, that he hijacked the car to transport the weapons. The rifles and ammunition were also connected to the crimes of vehicular hijacking and armed robbery in that the weapons were recovered in the stolen car within 20 minutes after the hijacking and the owner of the car denied any connection to them. See *People v. Dinwiddie*, 299 Ill. App. 3d 636, 643, 702 N.E.2d 181 (1998) (handgun connected to the crime where, although not used in the shooting, it corroborated the defendant's statement and was recovered from the car the defendant was in at the time of the shooting). If the defendant was not the armed robber and hijacker, then there was no evidentiary connection between the defendant and the recovered rifles and ammunition as the weapons were recovered in the stolen car, the proceeds of the armed robbery itself.

Because we can find no error in admitting the weapons and ammunition, we find no prejudice to the defendant in allowing the exhibits to be taken to the jury room during deliberations. See *McDonald*, 329 Ill. App. 3d 938. The defendant's claim of error based on the admission of the rifles and ammunition is rejected.

## VI. The Defendant's Sentence

The material in this section is not publishable under Supreme Court Rule 23.

## CONCLUSION

For the foregoing reasons, we affirm the defendant's convictions and sentences.

Affirmed.

WOLFSON, P.J., and BURKE, J., concur.