SIXTH DIVISION
May 13, 2011

No. 1-09-3202

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 07 CR 2653 |
| | ) | |
| DIEGO SANTIAGO, | ) | The Honorable |
| | ) | John J. Fleming, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE GARCIA delivered the judgment of the court, with opinion.
Justice McBride concurred in the judgment and opinion.
Justice Robert E. Gordon specially concurred, with opinion.

## OPINION

Defendant Diego Santiago seeks plain error review of two issues following his conviction of first degree murder after a jury trial. He first contends the State violated the evidentiary rule that bars the introduction of prior consistent statements when it introduced two prior statements inconsistent with the defendant's accomplices' trial testimony, a claim he admits was recently addressed and rejected by this court. The defendant next argues the State's references to the accomplices' guilty pleas improperly suggested to the jury that the guilty pleas were evidence of the defendant's guilt. The references to the guilty pleas were made in the course of the State's direct examination of the accomplices after each denied his prior identification of the defendant

No. 1-09-3202

as the shooter in the murder. We reject the defendant's underlying contention that the record demonstrates evidentiary errors occurred during his trial to support claims of plain error. We affirm.

BACKGROUND

The defendant, identified at trial as a member of the Maniac Latin Disciple (MLD) gang, was charged in the shooting death of Epifanio Santos, Jr., a member of the rival Spanish Cobra (SC) gang, that occurred during a street fight at the intersection of Armitage and Tripp in Chicago on December 28, 2006. The defendant and codefendants Emelio Rivera, Miguel Adorno, Alexandro Flores, and Martin Logan were indicted for first degree murder and conspiracy to commit first degree murder. The defendant was also charged with unlawful use of a weapon by a felon.

Two days after the shooting, Adorno admitted in a videotaped statement to police that he was a member of the MLDs and that he participated in the street fight with the SCs that resulted in Santos' death. On May 20, 2008, Adorno pleaded guilty to conspiracy to commit first degree murder. Adorno provided substantially the same information in his videotaped interview and at his guilty plea hearing. At the plea hearing, Adorno testified under oath that his videotaped statement to the police was a true and accurate depiction of what occurred. Adorno stated that the defendant shot Santos in the head. Earlier on the day of the shooting, there had been a fight between the MLDs and the SCs. A group of MLDs then convened at the defendant's house, where the defendant received a telephone call from his girlfriend Lisa, who was the mother of Santos' child. The defendant and Santos were well acquainted and had fought periodically over

2

several months. Adorno overheard the defendant tell Lisa: "stop putting my name in shit, bitch, 'cuz you're going to see what's going to happen to him." According to Adorno, the defendant retrieved a gun at his home before everyone departed the defendant's house to look for SCs. The MLDs came across Santos and a fellow SC, Rene Otero, and a fight ensued. Adorno struck Santos, and Logan punched him, knocking him to the ground. The defendant then approached and said "I got this," and shot Santos in the head with an automatic weapon. The men fled the scene. The defendant asked Adorno to get rid of the weapon.

Logan was arrested the day after the shooting. He too gave a videotaped interview naming the defendant as the shooter. Logan pleaded guilty to conspiracy to commit murder on August 18, 2008. Like Adorno, he acknowledged, under oath, the accuracy of his interview statements at his plea hearing. The information Logan provided in his police interview and at his guilty plea was essentially the same that Adorno provided.

The defendant's case proceeded to trial in August 2009. Before testimony was heard, the court granted the State's motion to admit evidence of gang crimes. The State called Adorno and Logan in its case in chief.

At trial, Adorno claimed to be unable to recall a significant portion of his videotaped interview with police detectives and his admissions at his guilty plea hearing. He testified he was a member of the MLDs, but the defendant was not. According to Adorno's testimony, the codefendants convened in the defendant's backyard prior to the shooting and another MLD named Casper was given a gun so he could "prove himself." Adorno claimed it was Casper that was present at the fight, not the defendant, and that Casper was the only person with a gun at the

3

fight. Adorno stated that while he did not see the actual shooting take place, the shooter was not the defendant. Adorno claimed he told the detectives that Casper had committed the shooting. He claimed to have pleaded guilty only to get out of Cook County jail.

Logan's trial testimony was substantially similar to Adorno's. He was unable to recall much of his statement to police detectives or his testimony at his guilty plea hearing. He testified that the defendant was not present at the fight and was not the shooter. He claimed that after he was arrested, the arresting officers stopped the police vehicle on the way to the police station to tell Logan what to say in the police interview that would follow once they arrived at the station. He testified the arresting officers threatened to charge him with the shooting but told him they would let him go if he said the defendant was the shooter. Logan testified he rejected repeating, at the defendant's trial, the story given to him by the police because he was charged in the shooting despite police promises to the contrary.

The State also called MLD member Carlos Garcia, who identified the defendant as a member of the MLDs and admitted participating in the fight with the SCs that resulted in Santos' death. Garcia testified he observed the defendant arrive at the fight with a gun and walk toward Santos, who was on the ground. He heard shooting, but did not see the actual shots fired. Garcia fled the scene in a car with Flores and Rivera. After they fled, Flores realized he had left his coat with his identification at the scene of the shooting. The three drove back to the scene where they were arrested.

SC member Rene Otero testified that he and Santos were smoking marijuana at the intersection of Armitage and Tripp on December 28, 2006, when they were assaulted by a group

4

of men. Otero and Santos fought back. During the fight, Otero saw Santos fall to the ground and then heard two gunshots. He did not see the shooting, but testified he saw the defendant armed with a gun during the fight. Otero did not know the defendant previously but identified him as the shooter from a photograph displayed at the police station.

Detective James Gilger testified he saw Santos' body on the sidewalk when he arrived at the scene of the shooting. Evidence technicians recovered two bullet fragments and a shell casing. Officer Vincent Stinar testified he was one of the officers that arrested Logan the day after the shooting. He testified he took Logan directly to the police station without making a stop. He denied telling Logan what to say in his videotaped interview.

The jury found the defendant guilty of first degree murder, which he committed by personally discharging a firearm that caused Santos' death. The defendant was sentenced to 30 years for the murder to be followed by an additional 25 years for discharging the weapon in the course of committing murder. This timely appeal followed.

## ANALYSIS

The defendant acknowledges the issues he raises were not preserved in the proceedings below. Plain error review is warranted when the evidence is closely balanced or the unpreserved errors deprived the defendant of fundamental fairness. *People v. Herron*, 215 Ill. 2d 167, 178-79, 830 N.E.2d 467 (2005). The defendant makes no claim that the evidence is closely balanced, a claim we would find foreclosed by the substantial evidence introduced at his trial.[1] We review

---

[1] In the "Point[s] and Authorities" of his main brief, the defendant cites a single case for his claim of plain error, *People v. Johnson*, 208 Ill. 2d 53, 63-64, 803 N.E.2d 405 (2008), a case

the alleged errors under the second-prong of plain error only. "In the second instance, the defendant must prove there was plain error and that error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." *Herron*, 215 Ill. 2d at 187 (citing *People v. Keene*, 169 Ill. 2d 1, 17, 660 N.E.2d 901 (1995)).

The State counters that the issues raised by the defendant fail to demonstrate trial error, which dooms the defendant's claims of plain errors. As to the first issue, the State points out that this court recently ruled the evidentiary rule against the admission of prior consistent statements does not apply to multiple prior inconsistent statements. Thus, no error occurred in the introduction of the videotaped interviews and the admissions at the guilty plea hearings. As to the second issue, the State responds that the multiple references to each codefendant's guilty plea were properly introduced to challenge each witness's claim of failed memory and to rebut each

_____

that reversed on prong-two of plain error. In support of his plain error claim, the defendant asserts "the State's evidence of guilt could not be said to be overwhelming." We reject this assertion as sufficient to warrant "review of Santiago's claims *** under both prongs of the plain error rule" as he contends in his reply brief. See *People v. Nieves*, 192 Ill.2d 487, 502-03, 737 N.E.2d 150 (2000) (Plain error claim is forfeited when the defendant "neither argues that the evidence was *closely balanced* nor explains why the error is so severe that it must be remedied to preserve the integrity of the judicial process.") (Emphasis added.); *People v. Carrero*, 345 Ill. App. 3d 1, 12 n.3, 801 N.E.2d 1084 (2003) ("There is a real question whether the defendant's claim that the evidence against him was 'not overwhelming' is equivalent to the 'factually close' standard" under prong-one of plain error.).

witness's trial claim of police intimidation and coercion. The State contends the properly admitted evidence did not compel the jury to find the defendant guilty simply because each codefendant pleaded guilty. Nor did the State suggest, much less argue, that the guilt of each codefendant was direct evidence of the defendant's guilt.

It is fundamental that if no error occurred there can be no plain error.

Prior Inconsistent Statements

The defendant contends the State violated the common law evidentiary rule against repetition of a prior consistent statement by admitting more than one prior inconsistent statement to challenge Adorno's and Logan's trial testimony that the defendant had no involvement with the death of Santos. He argues admission of both the codefendants' police statements, as well as their plea hearing testimony, was cumulative and they "unduly bolstered" each other.

We first observe that the defendant fails to provide us with a single case that holds that the evidentiary rulings he asserts before us, taken as error, "affected the fairness of the defendant's trial and challenged the integrity of the judicial process." *Herron*, 215 Ill. 2d at 187. In this context of a plain error claim, we note the defendant's agreement with the State that this issue concerns the admissibility of evidence, subject to review for an abuse of discretion. See *People v. Adkins*, 239 Ill. 2d 1, 23, 940 N.E.2d 11 (2010) ("The admissibility of evidence at trial is a matter within the sound discretion of the trial court and that court's decision will not be overturned absent a clear abuse of that discretion."). The defendant further concedes that separately, the videotaped statement and the guilty plea testimony were admissible under section 115-10.1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-10.1 (West 2006)).

No. 1-09-3202

Section 115-10.1 renders a recanting witness's prior inconsistent statements substantively admissible if the witness is subject to cross-examination and meets certain other requirements, which the defendant does not dispute were established here. *People v. Hastings*, 161 Ill. App. 3d 714, 719, 515 N.E.2d 260 (1987). Finally, the defendant acknowledges that this court resolved the issue of the admissibility of multiple prior inconsistent statements against the position he takes before us in *People v. Johnson*, 385 Ill. App. 3d 585, 898 N.E.2d 658 (2008).

In *Johnson*, the victim gave a written statement and testified before the grand jury that the defendant shot him. He recanted his identification of the defendant at trial. *Johnson*, 385 Ill. App. 3d at 588. On review of his conviction, the defendant argued both prior statements should not have been admitted at trial because the prior statements were consistent with each other and therefore subject to the rule against admission of prior consistent statements. *Id.* at 608. Though not entirely clear, it appears the Johnson defendant argued that the State should have introduced only one or the other. *Id.* We disagreed. "The defense is absolutely right that there is a long-established evidentiary rule against admission of a prior consistent statement ***. [Citations.] However, at issue here are prior *inconsistent* statements, or statements inconsistent with the witness's trial testimony." (Emphasis in original.) *Id.* We found the admission of multiple inconsistent statements is not subject to the rule against the admission of prior consistent statements even though the prior statements, inconsistent with the trial testimony, are consistent with each other. "The rule against admission of consistent statements exists because they needlessly bolster the witness's trial testimony. [Citations.] Obviously, inconsistent statements cannot bolster a witness's trial testimony. Thus, application of the rule makes no

8

sense here." *Id*. We rejected the same claim in *People v. Maldonado*, 398 Ill. App. 3d 401, 423, 922 N.E.2d 1211 (2010). "We agree [with *Johnson*] and hold that the introduction of more than one statement that is inconsistent with a witness's trial testimony, whether or not such statements are consistent with each other, is proper." *Maldonado*, 398 Ill. App. 3d at 423. The defendant's claim that the trial court erred in its evidentiary ruling allowing multiple inconsistent statements cannot stand in light of *Johnson* and *Maldonado*.

The defendant nonetheless contends that it is fundamentally unfair not to limit the number of prior inconsistent statements that may be introduced as we permitted in *Johnson* and *Maldonado*. He does not explain, however, the nature of the unfairness claim to support limiting the number of prior inconsistent statements that are offered to challenge the credibility of a witness. We are certain that if the defendant had available to him multiple prior inconsistent statements of a prosecution witness, he would seek to introduce each and every one and would do so properly. Of course, at some point, the trial judge may be asked, by way of a motion *in limine*, to exercise discretion to limit the number of such statements that may be introduced. See *People v. Owen*, 299 Ill. App. 3d 818, 822, 701 N.E.2d 1174 (1998) ("Motions *in limine* are designed to call to the attention of a trial court, in advance of trial, some evidence which, because of its potentially prejudicial nature, cannot be discussed in the jury's presence until the court has determined it is admissible."). No such motion was filed in this case.

The defendant further contends that a distinction, for fundamental fairness purposes, should be drawn between prior inconsistent statements introduced for impeachment purposes and such statements introduced substantively as the statements were here. He asserts *Johnson* was

"ill-reasoned and should not be followed." According to the defendant, *Johnson* "failed to appreciate that when a prior inconsistent statement is admitted as substantive evidence rather than impeachment evidence, that prior inconsistent statement has the same evidentiary value as a witness's trial testimony." It is certainly true that substantive evidence, in the form of prior inconsistent statements that satisfy section 115-10.1, may be considered by the trier of fact no differently than direct testimony by a witness. The question left unaddressed by the defendant is why such prior inconsistent statements, admissible as substantive evidence even in multiple forms, should not be considered by the trier of fact in determining the defendant's guilt or innocence.

We take from the defendant's otherwise unexplained assertion that some sort of "asked and answered" objection should have been made on the part of the defendant, which should preclude multiple and cumulative prior statements consistent with each other, though they are inconsistent with the testimony at trial. Once again, we question why such a claim warrants review under our plain error jurisprudence. A second-prong plain error claim is limited to the type of error that could not be cured "by sustaining [an] objection or instructing the jury to disregard *** the error." *People v. Carlson*, 79 Ill. 2d 564, 577, 404 N.E.2d 233 (1980). A second-prong plain error is not demonstrated when the underlying error is no more than a claim that too much of proper evidence was introduced. See *People v. Harvey*, 366 Ill. App. 3d 910, 922, 853 N.E.2d 25 (2006) ("The prior inconsistent statements were [properly] admitted to impeach the witnesses' credibility at trial (see 735 ILCS 5/2-1102 (West 2002)), and to assert the truth of the matter of the contents that were submitted (see 725 ILCS 5/115-10.1 (West 2002)).").

Under existing case law, no error occurred in the admission of the videotaped statements and the statements at the guilty plea hearings of the two codefendants. Even if the circuit court may be persuaded to limit the number of prior inconsistent statements in the course of ruling on a motion *in limine*, the claimed error before us can in no manner be seen as depriving the defendant of fundamental fairness at his trial for purposes of a second-prong plain error claim.

Evidence of Guilty Pleas

The defendant next contends the State's multiple references to each codefendant's guilty plea improperly suggested to the jury that the defendant was likewise guilty. The defendant's contention boils down to a claim that because the jury was repeatedly told that the accomplices pleaded guilty, the accomplices' guilty pleas might be relied upon by the jury to infer the defendant's guilt as well. For this argument, the defendant relies on a well-established rule of law: "A co-defendant's or accomplice's confession or admission is generally inadmissible as evidence of another defendant's guilt." *People v. Sullivan*, 72 Ill. 2d 36, 42, 377 N.E.2d 17 (1978).

*Sullivan*, however, is from a different evidentiary world than the case before us. In *Sullivan*, the prosecutor in opening statements told the jurors that they would hear from two witnesses that had pleaded guilty to the armed robbery of a liquor store in the town of Meredosia that the defendant was also charged with committing. *Sullivan*, 72 Ill. 2d at 39. The cashier of the liquor store testified two men committed the robbery, gave a clothing description of each, and stated that the robbers got away in her car. *Id*. at 38. When the two prisoners were called to

11

testify, the first invoked his fifth amendment right to remain silent and answered no questions. *Id*. at 39. The second prisoner "testified that he and [the first prisoner] were serving time in Menard for an armed robbery involving a liquor store in Meredosia." *Id*. at 39-40. The prisoner testified he was with the defendant on the day of the armed robbery in the prisoner's car, which they drove to Meredosia. "Upon being asked if anyone else was in the car, [this second prisoner] stated he did not wish to testify further." *Id.* at 40. No further testimony was elicited from this second prisoner. During closing argument, the prosecutor made the following remarks, without objection from defense counsel.

> " 'Now, if you think [defendant] was innocent, why was he
>
> with those two guys that are in prison now who pled guilty to
>
> armed robbery?
>
> * * *
>
> Now, common sense will tell you, reason will tell you that
>
> [defendant is] just as guilty as the other two, because he was in
>
> there. He had the money.' " *Id.*

Not surprisingly, our supreme court affirmed the appellate court's decision granting the defendant a new trial: "[W]e find the prosecutor's disclosure of the alleged accomplices' guilty pleas (during opening statements and upon direct examination of [prisoner two]), and his reliance on such during closing argument (in urging the jury to find defendant guilty), constituted a single continuous error [that] deprived defendant of a fair and impartial trial." *Id.* at 41-42. *Sullivan*'s rule, against the use of guilty pleas of others to prove the guilt of the defendant, is not remotely

applicable to the circumstances in this case.

In *Sullivan*, our supreme court discussed a case far more similar to the case at hand. "In *People v. Baker* (1959), 16 Ill. 2d 364, 372-73, an accomplice who fully disclosed to the jury his involvement in the crime for which the defendant was being tried was also permitted to testify that he had confessed to the crime. The court held that, in light of the accomplice's full factual disclosure, the further disclosure that he had confessed to the crime was not unduly prejudicial to the defendant." *Sullivan*, 72 Ill. 2d at 43. The instant case falls within the holding of *Baker* and is similar to *People v. Edwards*, 309 Ill. App. 3d 447, 454, 722 N.E.2d 258 (1999).

In *Edwards*, a codefendant pleaded guilty to the same crime the defendant was charged with committing. *Edwards*, 309 Ill. App. 3d at 451. When called at the defendant's trial, however, the codefendant testified he did not remember the events surrounding the crime. *Id.* He was asked whether he remembered pleading guilty at a hearing where he testified that the defendant had been his accomplice. *Id.* He recalled pleading guilty, but could not recall testifying that the defendant participated in the crime. *Id.* As in this case, the trial court did not issue any limiting instruction regarding the accomplice's testimony. *Id.* The jury found the defendant guilty and he contended on appeal that it was error for the jury to have heard testimony from his codefendant's guilty plea hearing, relying on the general rule from *Sullivan* quoted by the defendant in the case at bar. We rejected the defendant's claim of serious error because "the prosecutor did not argue the defendant was guilty because [the codefendant] pleaded guilty." *Edwards*, 309 Ill. App. 3d at 453. We held "the State was allowed to impeach its own witness, [the codefendant], with the fact that he had pleaded guilty after he testified herein that he did not

13

recall the events surrounding the [crime]." *Id.* at 454. We also made clear that the testimony

from the codefendant's guilty plea hearing "was admissible as substantive evidence." *Id.* at 451.

Consequently, "No error, plain or otherwise, occurred***." *Id.* at 453.

Similar to the court's finding in *Edwards*, the defendant here concedes "that the

prosecutor never explicitly argued to the jury to consider the co-defendants' guilty pleas as

evidence of defendant's guilt." He argues, however, that the number of times (purportedly 15)

the prosecution used the phrase "pled guilty," or variations thereof, constituted an "implicit

suggestion" that the guilty pleas were evidence of the defendant's guilt.

We recount some of the prosecution's statements that the defendant cites in support of

this argument. The State examined Adorno on direct:

"THE STATE: And on May 20th of 2008 you pled guilty to

an amended charge of conspiracy to commit first degree murder; is

that true?

* * *

THE STATE: No one threatened you or promised you

anything to ple[a]d guilty; isn't that true?

* * *

THE STATE: And during the hearing before Judge

Fleming when you pled guilty the Judge put you under oath; isn't

that right?

* * *

THE STATE: I then asked you about a phone conversation that you had the night of the murder with defendant Diego Santiago at your plea hearing; isn't that true?"

Logan's examination followed.

"THE STATE: And you pled guilty for your involvement in that person, Epifanio Santos, Jr.'s death, correct?

LOGAN:  Yes.

THE STATE: You punched Epi and knocked him to the ground just before he was murdered; isn't that true?

LOGAN:  Yeah, I did hit him.

THE STATE: And he went to the ground; isn't that true?

LOGAN:  Yes.

THE STATE: And then this defendant, Diego Santiago, walked up and shot him in the head; isn't that true?

LOGAN:  No, sir."

In closing argument, the prosecution stated:

"[C]razy, untreated bipolar guys don't get to plead guilty to cases and sent away to the penitentiary for 15 years unless they can make a knowing, intelligent waiver of their rights to trial and they understand the proceedings, and that's what happened to Martin Logan.

So don't let his little game coming up here and acting all

crazy, he didn't know what was going on[, to] fool you ***.  Come

on, really?  They are going to take a 5 and 15-year stretch

respectively in the Illinois Department of Corrections because they

didn't like the Cook County Jail?"

Nothing in the excerpts from the trial transcript quoted by the defendant in his brief, a sample of which we set out above, approaches, much less crosses, the line our supreme court drew in *Sullivan*.  The State never argued, or even suggested, that Logan's or Adorno's guilt was evidence of the defendant's guilt.  We also observe that Adorno's and Logan's pleas of guilty to conspiracy to commit murder added little to the substantial evidence that proved the defendant caused the death of Santos, including the substantive evidence in the form of prior inconsistent statements Adorno and Logan each gave directly implicating the defendant.

Nor is the defendant's complaint about the prosecution's references to the length of the sentences received by Adorno and Logan a *Sullivan*-type error.  The State's purpose in identifying those sentences was clearly to emphasize the doubtful explanations offered by Adorno and Logan for their willingness to plead guilty.  Nor does the mention of the sentences imposed on Adorno and Logan prejudice the defendant by suggesting the potential sentence he faced if found guilty. This case is unlike the case the defendant cites to support his contention -- *People v. Arroyo*, 339 Ill. App. 3d 137, 150, 790 N.E.2d 943 (2003).

In *Arroyo*, we found it was error to inform the jury of the sentence imposed on a codefendant because such evidence suggested the defendant faced a comparable sentence if

convicted. In *Arroyo*, the testimony regarding the sentence imposed on a codefendant was entirely "irrelevant and immaterial to the jury." *Arroyo*, 339 Ill. App. 3d at 150. As we stated, the evidence of the sentence Adorno and Logan received was properly used to cast doubt on the codefendants' testimony that they pleaded guilty merely to get out of Cook County jail. Even if evidence of the codefendants' sentences constituted error, it was not of the sort that caused the defendant substantial prejudice. *Arroyo*, 339 Ill. App. 3d at 152-53 (" 'Even if prosecutorial comment exceeds the bounds of proper argument, the verdict must not be disturbed unless it can be said that the remark caused substantial prejudice to the defendant***.' " (quoting *People v. Williams*, 192 Ill. 2d 548, 573, 790 N.E.2d 1001 (2000))). Without causing substantial prejudice to the defendant, the alleged error could not have deprived the defendant of a fundamentally fair trial that would call into question the integrity of our judicial system. *Herron*, 215 Ill. 2d at 179. In light of the substantial evidence implicating the defendant in the murder of Santos, the jury's verdict was unaffected by its knowledge that Adorno and Logan were given specific prison terms after pleading guilty to conspiracy to commit murder.

Finally, the defendant takes issue with Adorno being asked by the prosecution whether the defendant was present at the time Adorno entered his plea of guilty. Once again, it was permissible for the State to offer to the jury a plausible explanation for Adorno's contrary claims at trial -- the defendant's absence at the plea hearing made it easier for Adorno to testify to the defendant's guilt and, inversely, the defendant's presence at trial made it difficult for Adorno to repeat that testimony.

As in *Edwards*, the record before us is clear that "the prosecutor did not argue the

17

defendant was guilty because [the codefendant] pleaded guilty." *Edwards*, 309 Ill. App. 3d at 453. The trial court did not err in permitting the jury to hear the testimony from, and the circumstances surrounding, the codefendants' pleas of guilty in connection with Santos' murder. As in *Edwards*, "No error, plain or otherwise, occurred ***." *Id.*

## CONCLUSION

The trial court did not err in admitting Logan's and Adorno's two prior statements that were inconsistent with the testimony they offered at trial. Nor was it improper for the State to reference their guilty pleas where the State did not suggest that those pleas were evidence of the defendant's own guilt. Because no errors occurred, no plain error occurred.

Affirmed.

No. 1-09-3202

1-09-3202 People v. Diego Santiago

JUSTICE ROBERT E. GORDON, specially concurring:

I concur in the outcome but I must write separately. Like the majority, I find that reversal is not required on the particular facts of this case. Unlike the majority, I find that there was error. However, I affirm because I find that the error does not rise to the level of plain error. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007) (describing the plain error doctrine).

In the case at bar, no one testified at trial that they saw defendant commit the shooting of the victim, and there was no physical evidence linking defendant to the crime. The State's primary witnesses against defendant consisted of gang members or convicted felons who either implicated defendant in their earlier statements or who claimed at trial to have observed defendant with a gun.

On this appeal, defendant claims that he was denied a fair trial, because the State referred numerous times to the fact that his codefendants had already pled guilty for their involvement in the same crime, thereby suggesting to the jury that defendant was similarly guilty. There is a world of difference between impeaching witnesses with statements they made during their plea hearing, and introducing the fact of their actual convictions, particularly when essentially the same statements were already admitted through videotaped police interviews.

At trial, during the State's direct examinations of two alleged accomplices, the State

19

referred more than 15 times to the fact that both accomplices had already pled guilty to the same incident in which defendant stood accused. Then the jury received both the transcripts from the accomplices' guilty plea hearings, as well as portions of their videotaped police interviews. In closing, the State argued that the codefendants' guilty pleas and sentences were justified. I find this repetition unnecessary and prejudicial.

The majority relies on *Johnson* and *Maldonado*. Slip op. at 8-9. However, *Johnson* and *Maldonado* are distinguishable, because they involved prior multiple inconsistent statements by a victim or eyewitness, while the case at bar concerned prior multiple inconsistent statements of codefendants who pled guilty. The latter implicates the principles articulated by our supreme court in *People v. Stover*, 89 Ill. 2d 189 (1982), while the former does not. *Stover*, 89 Ill. 2d at 195-96. Simply put, guilty pleas create a risk of guilt by association, while statements of victims and eyewitnesses do not. See *People v. Dabbs*, 239 Ill. 2d 277, 289 (2010) ("a single evidentiary issue may be subject to more than one rule. Thus, while a positive rule may allow a certain type of evidence, a negative rule may prohibit its admission").

The majority relies primarily on *Sullivan*. However, our supreme court subsequently distinguished and explained its *Sullivan* holding in *People v. Stover*, 89 Ill. 2d 189 (1982).

The majority states that defendant failed to offer a persuasive reason to limit "the number of prior inconsistent statements that are offered to challenge the credibility of a witness." Slip op. at 9. That reason was offered by our supreme court in *Stover* – namely, the risk of guilt by association. *Stover*, 89 Ill. 2d at 195-96 (repeated references to a codefendant's guilty plea were improper because "[t]he implication was that defendant's guilt could be gauged accordingly").

20

In *Stover*, the State impeached defendant's former codefendant, who was also defendant's brother, with the codefendant's guilty plea for the same incident that defendant was being tried for. *Stover*, 89 Ill. 2d at 192. Both defendants were charged with resisting arrest, during the same arrest. *Stover*, 89 Ill. 2d at 192. At trial, the codefendant testified that he was never informed, prior to being handcuffed, that he was under arrest. *Stover*, 89 Ill. 2d at 193. The State was then permitted to impeach him with his guilty plea to the charge of resisting arrest. *Stover*, 89 Ill. 2d at 193. The jury then found defendant guilty of the same offense. *Stover*, 89 Ill. 2d at 193.

Our supreme court reversed and remanded for a new trial finding that the evidence of the codefendant's conviction was improperly admitted. *Stover*, 89 Ill. 2d at 196. In *Stover*, our supreme court explained that the holding in *Sullivan* did nothing more than "articulate[] the holding in *People v. Montgomery*, 47 Ill. 2d 510 (1971)." *Stover*, 89 Ill. 2d at 195. In *Montgomery*, our supreme court adopted Federal Rules of Evidence 609 which permitted impeachment of the general credibility of a witness by evidence of felony convictions which are less than 10-years old. *Montgomery*, 47 Ill. 2d at 516-17, 519. In *Stover*, the codefendant's conviction was for a misdemeanor and therefore inadmissible under the *Montgomery* rule. *Stover*, 89 Ill. 2d at 195.

In *Stover*, our supreme court held that the admission of prior inconsistent statements was not meant to be an end run around the purposes and limits of the *Montgomery* rule. *Stover*, 89 Ill. 2d at 195. In other words, even after *Sullivan*, prior felony convictions are generally admissible only for the purpose of impeaching general credibility, and under the limits set out by

21

our supreme court in *Montgomery*. *Stover*, 89 Ill. 2d at 195.

In the case at bar, the codefendants' convictions were not admitted for the purpose of impeaching their general credibility; and it was not necessary to admit their convictions in order to introduce the prior inconsistent statements from the plea hearings. Cf. *Arroyo*, 339 Ill. App. 3d at 151-52 (the State could not disclose to the jury that a witness had already been convicted for being the getaway driver for the same murder that defendant was standing trial for). In its brief to this court, the State conceded that "defendant is correct that the People did not use the witness's convictions as impeachment evidence pursuant to *People v. Montgomery*, 47 Ill. 2d 510 (1971)."

The appellate court has previously interpreted *Stover* exactly the same way we do now. In *People v. Arroyo*, 339 Ill. App. 3d 137, 152 (2003), the appellate court stated:

> "In clarifying the *Sullivan* ruling that an accomplice's testimony
> can be impeached with that accomplice's prior conviction of the
> same offense for which the defendant is on trial, our supreme court
> explained that *Sullivan* 'merely articulates the holding in ***
> *Montgomery*" and is limited to the defined standards set forth in
> *** Federal Rule 609. *Stover*, 89 Ill. 2d at 195. In other words,
> *Sullivan* does not provide a basis to admit a prior conviction to
> impeach a witness independent of the rule stated in *Montgomery*."
> See *Stover*, 89 Ill. 2d at 195." *Arroyo*, 339 Ill. App. 3d at 151.

As a second and additional reason for reversing in *Stover*, our supreme court observed

22

that "the prosecutor consistently emphasized, in his closing argument, that defendant's brother pleaded guilty to the offense in question." *Stover*, 89 Ill. 2d at 195. Our supreme court found that this was improper because "[t]he implication was that defendant's guilt could be gauged accordingly." *Stover*, 89 Ill. 2d at 195-96. Similarly, in the case at bar, the repetition implied defendant's guilt.

Under the particular facts and circumstances of *Stover*, our supreme court held that "evidence of the witness' prior guilty plea constituted reversible error, entitling the defendant to a new trial." *Stover*, 89 Ill. 2d at 196.

However, I do not find that the holding in *Stover* requires reversal in the case before us, because the facts and circumstances of this appeal differ in two significant respects from *Stover*.

First, in the *Stover* appeal, our supreme court applied a harmless error analysis (*Stover*, 89 Ill. 2d at 194), whereas in our case only a plain error analysis applies. Whether a reviewing court applies plain error or harmless error analysis "depends on whether defendant has forfeited review of the issue." *People v. Thompson*, 238 Ill. 2d 598, 611 (2010). To preserve an alleged error for review, a "defendant must both specifically object at trial and raise the specific issue again in a posttrial motion." *People v. Woods*, 214 Ill. 2d 455, 470 (2005); *People v. Piatkowski*, 225 Ill. 2d 551, 564 (2007).

Whether an error is forfeited or preserved is important because that fact determines which party in the appeal has the burden of persuasion. In a plain error analysis, "it is the defendant who bears the burden of persuasion with respect to prejudice." *Woods*, 214 Ill. 2d at 470. By contrast, in a harmless error analysis, the burden is on the State to prove beyond a reasonable

23

doubt that no prejudice occurred. *People v. McLaurin*, 235 Ill. 2d 478, 495 (2009).

In *Stover*, our supreme court found that the error was preserved for review and thus applied a harmless error analysis. *Stover*, 89 Ill. 2d at 193-94. By contrast, in the case before us, defendant concedes that plain error review applies, and thus he bears the burden of persuasion.

Second, I do not find that defendant carried his burden of persuasion under either prong of the plain error doctrine. *Piatkowski*, 225 Ill. 2d at 565. Under the plain error doctrine, a reviewing court may reverse only if: (1) a clear or obvious error occurred and the evidence was so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error; or (2) a clear or obvious error occured and that error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *Piatkowski*, 225 Ill. 2d at 565.

The majority states that "defendant makes no claim that the evidence is closely balanced" under the first prong (slip op. at 5), whereas the State argues that "defendant makes no argument that review is warranted under the second prong of plain error." Obviously, both these statements cannot be correct, since both the majority and the State agree that defendant is arguing under at least one of the two prongs of plain error. In his opening appellate brief, defendant did argue that the State's evidence was weak and not overwhelming, which I assume is an argument under the first or "closely balanced" prong of the plain error doctrine. *Carrero*, 345 Ill. App. 3d at 13 n.3 (analyzing defendant's claim under the first or "closely balanced" prong although defendant had alleged only that the State's evidence was " 'not overwhelming' "). Rather than

24

repeating a previously-given analysis, the brief then referred the reader back to a prior three-page discussion of why the State's case was weak. Compare with *Nieves*, 192 Ill. 2d at 503 (review forfeited where "[d]efendant's plain error argument consists of a single sentence"). In addition, in his reply brief, defendant stated unambiguously that "review of [defendant's claims is warranted under both prongs of the plain error rule."

The majority also states that "defendant cites a single case for his claim of plain error, *People v. Johnson*," a "prong-two" plain error case. Slip op. at 5 n.1. Actually, defendant's main brief cited two cases in support of his plain error claim: *Sullivan*; and *Johnson*. Also, the *Johnson* opinion discussed both "prong-two" and prong-one. First, the *Johnson* opinion "beg[a]n with a discussion of basic principles of plain error analysis" covering both prongs, which defendant cited in his brief. *Johnson*, 208 Ill. 2d at 63-64. Then the *Johnson* court affirmed the reversal of two defendants' convictions under the second prong *(Johnson*, 208 Ill. 2d at 85, 87), and explained why the evidence concerning the third defendant was "not closely balanced" under the first prong. *Johnson*, 208 Ill. 2d at 117. In addition, we should not ignore defendant's reply brief which cited *People v. Herron*, 215 Ill. 2d 167 (2005), where our supreme court reversed due to "error in a close case." *Herron*, 215 Ill. 2d at 193.

For all these reasons, it is clear that defendant was arguing both prongs on this appeal.

However, I do not find that defendant carried his burden of persuading either (1) that the evidence was "closely balanced" or (2) that the error was "so serious" that it affected "the integrity of the judicial process." *Piatkowski*, 225 Ill. 2d at 565. The claimed error does not rise to the level of plain error.

Thus, even though I find error, I concur with the holding of the majority and affirm.